UNITED STATES of America, Appellee,

v.

Gerardo CLASE–ESPINAL,
Defendant, Appellant.

No. 96–1881.

United States Court of Appeals,
First Circuit.

Heard Nov. 4, 1996.

Decided June 19, 1997.

Owen S. Walker, Boston, MA, with whom Federal Defender Office was on brief, for appellant.

Donald L. Cabell, Assistant United States Attorney, Boston, MA, with whom Donald K. Stern, United States Attorney, was on brief, for appellee.

Before SELYA, CYR and LYNCH, Circuit Judges.

CYR, Circuit Judge.

Gerardo Clase Espinal ("Clase") appeals the sentence imposed upon him for unlawful reentry following deportation. *See* 8 U.S.C. § 1326(a). The appeal centers upon a novel government motion for downward departure under U.S.S.G. § 5K2.0, which the district court rejected. We affirm.

## I

### BACKGROUND

A citizen of the Dominican Republic, Clase was first deported from the United States on February 4, 1994, following a felony conviction in a Texas state court for cocaine possession. On October 23, 1995, he was arrested in the United States again, and charged with unlawful reentry subsequent to an aggravated felony conviction. *See* 8 U.S.C. § 1326(b)(2) (1995). After Clase entered a guilty plea, the government agreed to recommend a downward departure under U.S.S.G.

§ 5K2.0 in return for a stipulation of alienage and deportability following his release from prison, as well as waivers of any deportation hearing and any appeal from the deportation order.

At sentencing, after Clase represented that he would so stipulate, the government recommended a two-level downward departure on the ground that the stipulation constituted conduct not contemplated by the Sentencing Guidelines (or "Guidelines"). *See generally* U.S.S.G. § 5K2.0. After rejecting the requested section 5K2.0 departure as beyond its power, the district court increased the base offense level ("BOL") from eight to twenty-four, pursuant to U.S.S.G. § 2L1.2(b)(2) (1995), on the ground that the 1994 deportation had followed a conviction for an aggravated felony.

## II

### DISCUSSION

Clase appeals the resulting forty-six month prison sentence, challenging both the sixteen-level enhancement imposed pursuant to U.S.S.G. § 2L1.2(b)(2) and the district court ruling that it lacked authority to depart under U.S.S.G. § 5K2.0. The government supports the section 2L1.2(b)(2) enhancement, but joins Clase in opposition to the district court ruling denying a section 5K2.0 departure.

### A. *"Aggravated Felony" Enhancement (U.S.S.G. § 2L1.2(b)(2) )*

■ The prior state conviction was ruled an "aggravated felony," for section 2L1.2(b)(2) purposes, because cocaine possession is a felony under Texas law, *see* Tex. Health & Safety Code Ann. § 481.115(f) (1996), and accordingly violates the Federal Controlled Substances Act, 21 U.S.C. § 801 *et. seq.* Section 2L1.2(b)(2), comment. (n.7), defines "aggravated felony" as, *inter alia,* "any drug trafficking crime ... defined in 18 U.S.C. § 924(c)(2)." Section 924(c)(2) defines "drug trafficking crime" as, *inter alia,* "any

felony punishable under the Controlled Substances Act."[1]

Clase acknowledges that our recent decision in *United States v. Restrepo–Aguilar,* 74 F.3d 361, 364–65 (1st Cir.1996), forecloses the present claim, but urges nonetheless that the term "felony," as used in 18 U.S.C. § 924(c)(2), encompasses only offenses which would constitute felonies under federal law. As *Restrepo–Aguilar* directly controls, and Clase offers no tenable basis for disregarding *stare decisis,* we decline to revisit the matter. *See, e.g., Williams v. Ashland Eng'g Co., Inc.,* 45 F.3d 588, 592 (1st Cir.) (noting that First Circuit panels generally are bound by a prior panel decision directly on point), *cert. denied,* —— U.S. ——, 116 S.Ct. 51, 133 L.Ed.2d 16 (1995).

## B. *Downward Departure Under U.S.S.G. § 5K2.0*[2]

■ On April 28, 1995, the Attorney General of the United States disseminated a memorandum ("the Memorandum") authorizing United States Attorneys to recommend a departure below the applicable guideline sentencing range in return for an admission of alienage and deportability, as well as waivers of any administrative deportation hearing and any judicial appeal from the resulting deportation order. The Memorandum indicates that a downward departure based on such cooperative conduct on the part of alien criminal defendants is permissible because it is a ("mitigating circumstance of a kind, or ... degree, not adequately taken into consideration by the Sentencing Commission....").

1. Clase argues that Congress cannot have intended that a state felony conviction for mere drug possession satisfy the "aggravated felony" requirement under § 2L1.2(b)(2), since the term "drug trafficking offense" clearly excludes simple drug possession. As this claim was never raised below, we review only for "plain error." *United States v. Olivier–Diaz,* 13 F.3d 1, 5 (1st Cir.1993).

Not surprisingly, error cannot be considered "plain" unless, among other things, it is "obvious." *Id.* Since this court has already rejected the very contention asserted by Clase on appeal, *see United States v. Restrepo–Aguilar,* 74 F.3d 361, 364 n. 5 (1st Cir.1996), we are in no position to conclude that the district court ruling constituted "plain error" in these parts. *Olivier–*

■ The United States Attorney for the District of Massachusetts accordingly recommended a two-level downward departure under section 5K2.0 based on the agreement by Clase to stipulate to deportation and waive any related appeal. The district court rejected the recommendation.

I am not satisfied that there are grounds within Section 5K2.0 to permit departure based upon ... a representation [that Clase would stipulate to deportation, etc.]. *I make that determination as a matter of law.* If I have such power, then I need to be instructed that I do by another court.... [U]pon my own independent determination, I find the use of Section 5K2.0 to permit a downward departure on the basis of the concession of deportability and an agreement not to contest it is *not a matter* that was *left unconsidered* by the Sentencing Commission. Certainly, the specific factual circumstances were not considered by the Sentencing Commission, but the larger issue of deportation and the mechanisms for deportation, agreements to ameliorate the difficulties that are administrative burdens for the government, are matters within the scope of the "heartland" calculations of the Sentencing Commission, generally, and in connection with deportation.

*I view the Attorney General's willingness, in certain circumstances, to agree to such a downward departure to be in the form of a shadow sentencing guideline, unauthorized by relevant law* [,] which allocates responsibilities in this area and [is] not entitled to any particular weight. (Emphasis added.)[3]

*Diaz,* 13 F.3d at 5. The remaining challenges to the § 2L1.1(b)(2) ruling merit no discussion.

2. Although a refusal to depart is not ordinarily appealable, *see United States v. Tucker,* 892 F.2d 8, 11 (1st Cir.1989), the rule is otherwise if, as here, the district court refused on the ground that it lacked the authority to depart. *See United States v. Romolo,* 937 F.2d 20, 22 (1st Cir.1991).

3. Generally speaking, a decision not to depart is reviewed only for abuse of discretion. *Koon v. United States,* —— U.S. ——, ———–——, 116 S.Ct. 2035, 2046–47, 135 L.Ed.2d 392 (1996); *United States v. Cali,* 87 F.3d 571, 579–80 (1st Cir.1996). Nevertheless, as noted in *Koon,* "[a] district court by definition abuses its discretion

■ As posed by the parties and addressed by the district court, therefore, the question before us turns upon an abstract legal principle: whether the stipulation and waiver relating to alienage and deportability permit a section 5K2.0 departure based on the conclusory departure rationale propounded in the Memorandum.

The government and the defendant insist on appeal that the stipulation and waiver relating to alienage and deportability remove the case from the "heartland." *See United States v. Rivera*, 994 F.2d 942, 947 (1st Cir. 1993) (Breyer, C.J.). We agree that the proffered departure ground is not expressly forbidden, discouraged, or encouraged by the Sentencing Guidelines. *See Koon v. United States*, — U.S. —, —, 116 S.Ct. 2035, 2045, 135 L.Ed.2d 392 (1996) (quoting *Rivera*, 994 F.2d at 949); *see also* U.S.S.G. §§ 5H1.1—5H1.12; 5K2.1—5K2.18. Yet we agree with the district court that it is insufficient, as a matter of law, to warrant a downward departure.

■ The sentencing court may resort for decisional assistance to 28 U.S.C. §§ 991–998 (*i.e.*, the Sentencing Commission enabling act itself), 18 U.S.C. § 3553, the Guidelines, including the policy statements and official commentary, as well as to relevant case law. Moreover, courts must bear in mind the expert Sentencing Commission ("Commission") assessment that departures based on judicial determinations that a proffered ground for departure was not adequately considered by the Commission are to be regarded as "highly infrequent." *See* U.S.S.G. Ch. 1, pt. A, intro. comment. 4(b); *see also Koon,* — U.S. at —, 116 S.Ct. at 2045. Absent a guideline or commentary directly addressing a proffered ground for departure, therefore, sentencing courts must examine the "structure and theory of [the] relevant individual guidelines and the Guidelines taken as a whole," with a view to whether the proffered ground makes the case sufficiently atypical to remove it from the "heartland." *Koon,* — U.S. at —, 116

S.Ct. at 2045 (quoting *Rivera*, 994 F.2d at 949).

### 1. *Whether Stipulated Deportation Constitutes a Mitigating Circumstance "of a kind" Not Contemplated by the Sentencing Commission?*

An aggravating or mitigating circumstance falls within the "heartland" unless it is "of a kind" not adequately considered by the Commission or "present to a degree" neither readily envisioned nor often seen in connection with such an offender or offense of conviction. *See* 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0; *United States v. Sklar,* 920 F.2d 107, 115 (1st Cir.1990). We are loath to presume, as a general matter, that the Commission either overlooked or inadequately considered the statutory and regulatory structures upon which an informed sentencing treatment of immigration offenses significantly depended. *See, e.g.,* U.S.S.G. § 2L1.2 comment. (citing to 8 U.S.C. § 1326); *id.* comment. (n.4) (describing 16–level enhancement for alien previously deported after conviction for aggravated felony). Rather, given its mandate, *see* 28 U.S.C. § 994, as well as its institutional expertise and experience, *see id.* § 995, we think it is quite clear that the Commission would have considered that an alien defendant, particularly one convicted of *unlawful reentry* subsequent to deportation for an aggravated felony, almost certainly would be deported again. *See* 8 U.S.C. §§ 1251(a)(1)(B) (alien who has entered without inspection), § 1251(a)(2)(A)(iii) (alien convicted of aggravated felony after admission) (1996) (amended sections presently codified at 8 U.S.C. § 1227 (1997)).

Furthermore, we believe it would be farfetched to suppose that the Commission overlooked the central reality that in all likelihood deportation would occur by normal operation of law as a matter of course— *irrespective of the alien defendant's consent*—following a conviction for illegal reentry subsequent to deportation for an aggra-

when it makes an error of law." — U.S. at —, 116 S.Ct. at 2047. Moreover, the government agreed it was "essentially taking a legal position ... that stipulated deportations are, as a matter of law, something not fully contemplated

by the Sentencing Commission in the preparation of the guidelines and subject to a downward departure through Section 5K2.0." Therefore, the district court ruling must be reversed if it constituted legal error.

vated felony. *Cf. United States v. Restrepo,* 999 F.2d 640, 647 (2d Cir.) (even absent any indication in the Guidelines that Congress or the Commission "considered the interplay between deportability and sentencing provisions," deportability is not a ground for departure because, among other reasons, "it is difficult to believe that the Commission was not conscious that a large number of defendants sentenced in the federal courts are aliens"), *cert. denied,* 510 U.S. 954, 114 S.Ct. 405, 126 L.Ed.2d 352 (1993); *United States v. Ceja–Hernandez,* 895 F.2d 544, 545 (9th Cir. 1990) *(per curiam )* ("When setting the offense level for entry after deportation, the Sentencing Commission would certainly have been aware of the practice of promptly deporting aliens after they serve such sentences.").

Similarly, the facilitative nature of stipulated deportations does not strike us as a circumstance "of a kind" left unconsidered by the Commission. Several guidelines treat stipulated deportations in the same manner as formal deportations for purposes of subsequent prosecution. For example, sections 2L1.1(b)(3) and 2L2.2(b)(1) identify a prior deportation, whether voluntary or involuntary, as a "specific offense" characteristic. *See also* U.S.S.G.App. C, amend. 196 (1995) (likewise discussing voluntary as well as involuntary deportations). Although these provisions simply indicate that prior deportations, voluntary as well as involuntary, are aggravating "specific offense" characteristics, their presence in the Guidelines conspicuously demonstrates Commission awareness not only that numerous illegal aliens become enmeshed in the criminal justice system, but that many are expelled from the United States without ever undergoing formal deportation proceedings.[4] Moreover, given the large numbers of illegal aliens expelled from the United States each year without undergoing formal deportation proceedings,[5] we consider it exceedingly improbable that the Commission either overlooked stipulated expulsions altogether or regarded their facilitative value to be "of a kind" warranting a downward departure. These analogous data indicate that an alien criminal defendant with no plausible basis for contesting deportation—particularly one convicted of illegal reentry subsequent to deportation for an aggravated felony—does not meet the atypicality requirement for a section 5K2.0 departure simply by relying upon whatever administrative convenience presumably may result from a stipulated deportation. *Cf. United States v. Barber,* 93 F.3d 1200, 1205 (4th Cir.1996) (vacating upward departure for using firearm to effect second degree murder, because "Commission could not have failed to take into account ... that that offense is commonly committed by use of a gun.... No scenario could be more typical, more within the heartland, of second-degree murder than death by one weapon or another, especially by firearm.").[6]

---

**4.** *See Immigration and Naturalization Serv. v. Lopez–Mendoza,* 468 U.S. 1032, 1044, 104 S.Ct. 3479, 3486, 82 L.Ed.2d 778 (1984) (noting that approximately 97.5% of all illegal aliens are deported from the United States voluntarily with no formal adjudication of status by the Immigration and Naturalization Service ["I.N.S."] ). Indeed, the data consistently indicate that only about 3% of all apprehended aliens who are expelled ever undergo a deportation hearing. *See* Immigration and Naturalization Service, *1993 Statistical Yearbook* 158 tbl.59 (1994); Immigration and Naturalization Service, *1987 Statistical Yearbook* 124 tbl.70 (1988) (tables reflecting that, in 1993, only about 3% of all apprehended aliens required to leave the United States were deported after a hearing. The data are similar in other years: 3.3% in 1992, 2.6% in 1991, and 2% in 1987.). The vast majority of illegal aliens are subjected to a nonadversarial procedure known as "voluntary departure with safeguards" (admission of illegal status, agreement to leave, and retention in custody pending a voluntary departure observed by

an I.N.S. agent) or submit to a "required departure under docket control" (after I.N.S. officer starts deportation file, alien admits illegal status and accepts voluntary departure). *See id.* at xxxix. I.N.S. does not publish data regarding stipulated *deportations,* as distinguished from stipulated departures requiring no formal administrative adjudication.

**5.** In 1991, for example, 28,759 aliens were deported and 1,060,745 were required to depart (totaling 1,089,504 expelled). *1993 Statistical Yearbook* 158 tbl. 59; 1992: 38,202 deported and 1,105,160 required to depart (totaling 1,143,362 expelled), *id.;* 1993: 36,686 deported and 1,242,169 required to depart (totaling 1,278,855 expelled), *id.*

**6.** An analogous guideline provision likewise bolsters our assessment. Section 3E1.1(a) permits a two-level downward adjustment for clearly demonstrating acceptance of responsibility for the

We therefore conclude that the Sentencing Commission was fully cognizant that virtually all alien criminal defendants, convicted under 8 U.S.C. § 1326(a) and sentenced pursuant to U.S.S.G. § 2L1.2, would be subjected to deportation and that many undoubtedly would stipulate to deportation. Accordingly, we hold, at least in the absence of a colorable, nonfrivolous defense to deportation, that the proffered ground for departure under U.S.S.G. § 5K2.0 does not constitute a mitigating circumstance *of a kind* not adequately considered by the Commission.

### 2. *Whether the Stipulated Deportation Constituted Mitigation "to a degree" Not Contemplated by the Commission?*

■ A mitigating circumstance is present to a degree not contemplated by the Commission only if it is portentous enough to make the case *meaningfully* atypical. *United States v. Mariano*, 983 F.2d 1150, 1154 (1st Cir.1993) (§ 5K2.0 serves as a "safety valve" for "important, atypical" factors which remove the case from the "heartland"); *Sklar*, 920 F.2d at 115 n. 7 (proffered circumstance "must have weight … it must be sufficiently portentous to move the case out of the heartland for the offense of conviction."); *United States v. Williams*, 891 F.2d 962, 967 (1st Cir.1989) ("departures must be based upon *meaningful atypicality;* … judges can always flyspeck individual cases to find some sort of idiosyncracy…. If the guidelines are to provide a coherent system of criminal sentencing, the trial court's right to depart, up or down, must be restricted to those few instances where some *substantial atypicality* can be *demonstrated*.") (emphasis added).

Absent some mitigating circumstance not suggested here, no substantial atypicality is demonstrated where an alien defendant simply stipulates to deportation and no nonfrivolous defense to deportation is discernible.

*Compare United States v. Khan*, 920 F.2d 1100, 1107 (2d Cir.1990) (discussing potential downward departure for saving government informant's life), *cert. denied*, 499 U.S. 969, 111 S.Ct. 1606, 113 L.Ed.2d 669 (1991). As the district court noted, the government's conclusory departure recommendation, *simpliciter*, does not purport to demonstrate that the facilitative conduct relied upon even constituted substantial assistance warranting sentencing leniency. *Cf. United States v. Cardenas*, 896 F.2d 317, 320 (8th Cir.1990) (holding that government's acknowledgement that defendant accepted personal responsibility does not control sentencing determination); *United States v. Nunley*, 873 F.2d 182, 187 & n. 6 (8th Cir.1989) (same); *United States v. Forbes*, 888 F.2d 752, 754 (11th Cir.1989) (sentencing court not bound by government stipulation that defendant was minor participant). Consequently, there is no indication that any administrative convenience to the government constituted a mitigating circumstance "to a degree" not adequately considered by the Commission. *See United States v. Romolo*, 937 F.2d 20, 24–25 (1st Cir.1991); *Sklar*, 920 F.2d at 115. More to the present point, the stipulation in this case must be considered *de minimis* from the standpoint of its assistance in alleviating any administrative burden upon the government, since Clase has no discernible defense to deportation.

Thus, the parties essentially are left with their implicit contention that *any* stipulated deportation constitutes an extraordinary mitigating circumstance, for no other reason than that it bears the government's endorsement and dispenses with an administrative hearing. However, were downward departures permitted simply on the conclusory representations in the Memorandum, without regard to whether the alien defendant has a nonfrivolous defense to deportation, individualized guideline sentencing indeed could be undermined by what the district court aptly

---

offense of conviction. U.S.S.G. § 3E1.1(a). Nevertheless, "a defendant who … *frivolously contests* [ ] relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." *Id.* comment. (n.1(a)) (emphasis added). By the same token, we think a downward departure for sim-

ply stipulating to deportation following a conviction for illegal reentry subsequent to an aggravated felony, unaccompanied by any suggestion that the alien defendant possessed a *non* frivolous defense to deportation, would represent a disproportionate reward for whatever modest administrative benefit might obtain.

termed a "shadow guideline" that would erode the prescribed BOL in any alien-criminal defendant's case to which the government chose to apply the Memorandum, *simpliciter.*[7]

██ The district court prudently recognized that sentencing courts may not defer to unsubstantiated prosecutorial recommendations as adequate grounds for section 5K2.0 departures. We note as well that even the indispensable government motion for a "substantial assistance" departure under U.S.S.G. § 5K1.1 simply presents the matter for judicial consideration. *See Mariano,* 983 F.2d at 1155 ("[T]he decision whether to depart after the government has made such a [§ 5K1.1 substantial assistance] motion ... falls squarely within the district court's domain. The district court is not obligated to depart downward simply because a grateful prosecutor prefers a lighter sentence."). The district court correctly determined that it lacked authority to depart on the ground that the stipulated deportation constituted mitigation to a degree neither readily envisioned nor often seen in connection with such an offender or offense of conviction. *See Mariano,* 983 F.2d at 1154; *Sklar,* 920 F.2d at 115 n. 7.

### III

### CONCLUSION

With no record indication that this case is meaningfully atypical in any material respect, *see id.* at 115, the section 5K2.0 departure recommendation lacked a cognizable legal basis. Accordingly, it is unnecessary to determine whether a stipulation of alienage and deportability, accompanied by the attendant waivers, may ever serve as an adequate ground for downward departure under section 5K2.0. *See Koon,* — U.S. at —, 116 S.Ct. at 2051 ("with few exceptions, departure factors should not be ruled out on a categorical basis").

*The district court judgment is affirmed.*

---

**7.** The Memorandum itself simply announces that the "Administration is committed to effecting the deportation of criminal aliens from the United States as expeditiously as possible. You [*i.e.,* United States Attorneys] can make a major contribution to this effort by effectively using available prosecutive tools for dealing with alien defendants." *See also* pp. 4–5 *supra.*