Daniel PIMENTAL, Petitioner,

v.

UNITED STATES of America, Respondent.

Civil Action No. 96–11943–WGY.

United States District Court, D. Massachusetts

Oct. 28, 1997.

Daniel Pimental, Fort Dix, NJ, pro se.

Allison D. Burroughs, U.S. Attorney's Office, Boston, MA, for U.S.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

Daniel Pimental ("Pimental") petitions for habeas corpus relief pursuant to 28 U.S.C. § 2255. Pimental alleges he was denied effective assistance of counsel during sentencing.

## I. BACKGROUND

After an extensive drug trafficking investigation, agents of the Drug Enforcement Administration arrested Daniel Pimental and others on October 17, 1995. Two days later, a grand jury sitting in the District of Massachusetts returned a thirteen-count Indictment charging Pimental and his co-defendants with various drug trafficking crimes. Pimental was charged with one count of conspiracy to possess with the intent to distribute cocaine in violation of 21 U.S.C. § 846, and five counts of distribution of cocaine in violation of 21 U.S.C. § 841.

On January 30, 1996, Pimental pled guilty to all six counts pursuant to a plea agreement. The plea agreement included a three level managerial and supervisory enhancement of his base offense level, pursuant to U.S.S.G. § 3B1.1(b), which was cancelled out by a three level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(b)(2), and an agreement by the United States to recommend a mid-range sentence of 70 months. On April 29, 1996, this

Court sentenced Pimental to 70 months incarceration.

On August 15, 1996, Pimental filed a motion to vacate under 28 U.S.C. § 2255, claiming ineffective assistance of counsel. This Court summarily denied the motion on October 16, 1996. Pimental promptly appealed, and this Court granted a certificate of appealability. After this Court indicated that it wished to reconsider its judgment of dismissal in certain respects, the Court of Appeals remanded the petition on February 5, 1997, in accordance with *Commonwealth v. SS Zoe Colocotroni*, 601 F.2d 39, 42 (1st Cir.1979).

## II. DISCUSSION

To prevail on his ineffective assistance of counsel claim, Pimental must show that 1) his counsel's performance was constitutionally deficient, and 2) but for this deficient performance, the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The first element requires Pimental to demonstrate that counsel's performance fell below "an objective standard of reasonableness," such that it was "not 'within the range of competence demanded of attorneys in criminal cases.'" *Knight v. United States*, 37 F.3d 769, 774 (1st Cir.1994) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 [1985]). Furthermore, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

Pimental identifies two grounds for his claim of ineffective assistance of counsel at sentencing: 1) counsel failed to challenge the three level managerial and supervisory role sentence enhancement, and 2) counsel failed to inform Pimental of the possibility of obtaining a two level reduction by agreeing to waive his rights to contest deportation. Pimental also claims his counsel was ineffective for advising against an appeal.

■ With respect to the first component of his claim, Pimental contends that despite his express objections, his attorney informed the probation officer by letter that Pimental admitted to being a manager and supervisor for purposes of U.S.S.G. § 3B1.1(b). Pimental further asserts that, following sentencing, he asked counsel to appeal the sentence based on the managerial and supervisory enhancement, but counsel refused to do so.

Pimental acknowledges that his attorney sought and obtained a three level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b)(2) and that he was sentenced to 70 months, the sentence the Government agreed to recommend. The record shows that Pimental indicated satisfaction with his legal counsel at the plea colloquy.[1] Moreover, Pimental objected to elements of the government's recitation of the factual basis supporting the plea during the plea colloquy—specifically that he was not in the country during one of the transactions referenced by the United States, *see* Plea Tr. at 24–25—but did not object to the three level enhancement, either at the plea colloquy or prior to sentencing.

At his sentencing, the Court ruled that Pimental was a manager and supervisor. Pimental's counsel agreed the enhancement was appropriate and conceded that Pimental supervised at least five of the seven co-defendants. Transcript, Disposition, April 29, 1996 ("Disposition Tr."), at 3–6. Immediately prior to sentencing, Pimental apologized for his conduct and made reference to a disputed fact concerning his criminal record. Disposition Tr. at 14. He did not attempt to rebut the United States' assertion that he acted in a managerial capacity.

Whether Pimental told his counsel he did not participate as a manager or supervisor is somewhat beside the point. Pimental had opportunities to object during the plea colloquy, prior to sentencing, and at the sentencing itself. He did object to other matters, but not to this. Given that Pimental's counsel obtained a three level reduction and a mid-range recommended sentence, and that the Government presented a factual basis to support the finding that Pimental acted in a supervisory or managerial role, there is noth-

1. Pimental indicated that he "had enough time to talk all this over with [his attorney]" and that he thought counsel had "defended [him] and gotten for [him] those things which are [his] rights under the law." Transcript, Change of Plea Hearing, January 30, 1996 ("Plea Tr."), at 17.

ing to suggest that counsel's advice was outside "the range of competence demanded of attorneys in criminal cases." *Knight,* 37 F.3d at 774. Furthermore, the factual basis supporting this Court's finding that Pimental acted in a managerial or supervisory role defeats Pimental's claim that, but for counsel's allegedly erroneous agreement to the managerial and supervisory enhancement, Pimental would have received a lesser sentence. He would not have. For the same reasons, Pimental's assertion that counsel erroneously advised against an appeal is without merit.

As a second ground for his ineffective assistance of counsel claim, Pimental points to an April 28, 1995 memorandum issued by Attorney General Reno, entitled "Deportation of Criminal Aliens," which authorizes United States Attorneys to agree to a one or two level downward departure from the applicable guideline sentencing range in exchange for the defendant's admission of alienage and deportability, as well as a waiver of any right to appeal the resulting deportation order. *See United States v. Clase-Espinal,* 115 F.3d 1054, 1056 (1st Cir.1997) (discussing the Attorney General's memorandum). Pimental claims that his counsel's failure to negotiate such a two level reduction constituted ineffective assistance.

Oddly, there is something—not much—to this claim. Here, of course, there is not the slightest evidence that the Government would have entered into such an agreement.[2] This Court does note, however, that practice in the District of Massachusetts indicates the readiness of the Government to agree to the type of downward departures proposed in the Attorney General's Memorandum. *See, e.g.,*

*United States v. Cruz,* Cr. No. 95–10169–JLT (Tauro, C.J.); *United States v. Mojica-Arias,* Cr. No. 96–10196–REK (Keeton, J.); *United States v. Pichardo-Pantaleon,* Cr. No. 96–10283–MLW (Wolf, J.); *United States v. Castro-Dubon,* Cr. No. 96–10268–RGS (Stearns, J.); *United States v. Munoz,* Cr. No. 97–10083–RGS (Stearns, J.); *United States v. Correa,* Cr. No. 96–10060–GAO (O'Toole, J.); *United States v. Diaz-Diaz,* Cr. No. 97–10014–GAO (O'Toole, J.). Indeed, since the issuance of the Attorney General's memorandum, I had rather routinely approved such departures when jointly presented by the parties, *see, e.g., United States v. Pena-Baez,* Cr. No. 95–10387–WGY; *United States v. Lira-Cuevas,* Cr. No. 96–10137–WGY; *United States v. Mejia,* Cr. No. 96–10092–WGY, and likely would have done so in this case had the United States Attorney suggested one.

■ It turns out, however, that in the First Circuit, all of these agreements are fundamentally flawed as beyond the legal power of the district judge to implement. As my colleague Judge Woodlock explained in a thoughtful analysis that has since been upheld by the First Circuit, a district court lacks the authority to depart from the sentencing guidelines on the ground proposed by Attorney General Reno because stipulated deportation constitutes mitigation to a degree neither readily envisioned nor often seen in connection with the offender or offense at issue. *See United States v. Clase-Espinal,* 115 F.3d 1054, 1056–57 (1st Cir. 1997) (affirming Judge Woodlock's ruling and holding that a waiver related to alienage and

---

**2.** *See United States v. Prince,* 110 F.3d 921, 926 (2nd Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 188, —— L.Ed.2d —— (1997) (failure of defense counsel to seek the Government's agreement to such a downward departure did not amount to constitutional error because 1) the defendant had not presented any evidence that the Attorney General's policy had actually been implemented in that federal district at the time of his sentencing, and 2) there was no reason to believe the district court would have departed downward even if the defendant had been willing to stipulate to deportation). *But see* Lisa M. Farabee, *Disparate Departures Under the Federal Sentencing Guidelines: A Tale of Two Districts,* 30 Conn.

L.Rev.(forthcoming Feb. 1998) (observing that United States Attorneys in the District of Connecticut rarely suggest downward departures on the basis of substantial assistance, U.S.S.G. § 5K1.1, but that district judges, guided by the Second Circuit's extensively developed downward departure jurisprudence, liberally exercise their discretion to grant downward departures pursuant to U.S.S.G. § 5K2.0, whereas in the District of Massachusetts, which is subject to the First Circuit's notoriously strict review of such discretionary departures, United States Attorneys more frequently suggest downward departures on the basis of substantial assistance).

deportability is "insufficient, as a matter of law, to warrant a downward departure").[3]

■ Pimental's argument thus reduces to a claim that his counsel should have talked the government and this Court into committing legal error which would today—as in the other cases cited—be beyond the legal power of the Court of Appeals to review. *See United States v. Barnes,* 83 F.3d 934, 941 (7th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 156, 136 L.Ed.2d 101 (1996); *United States v. Aguilar,* 884 F.Supp. 88, 91–92 (E.D.N.Y. 1995) (Weinstein, J.). Unfortunately for Pimental, however, a failure by counsel to cause the trial court to commit legal error simply does not amount to ineffective assistance of counsel in any constitutionally cognizable sense.

## III. CONCLUSION

For the reasons discussed above, this court *DENIES* Pimental's motion to vacate, set aside, or correct his sentence under 28 J.S.C. § 2255. Having once issued a certificate of appealability, however, this Court does so again even though, upon reflection, it turns out that there's not much to this appeal.

---

**3.** The First Circuit's rejection of the Attorney General's memorandum was not, however, a foregone conclusion. The Eighth Circuit reversed a district judge's ruling that as matter of law he could not depart downward from the sentencing guidelines on the basis of the defendant's waiver and consent to administrative deportation. *See United States v. Cruz–Ochoa,* 85 F.3d 325, 325–326 (8th Cir.1996). Without presenting its rationale, the court simply declared "[w]hether a downward departure should be granted lies within the sound discretion of the district court." *Id.* at 326 (citation omitted).

Similarly, a district court has ruled it is empowered under U.S.S.G. § 5K2.0 to depart downward on the basis of the defendant's waiver of rights to challenge deportation. *United States v. Santos,* No. 91 CR. 724 CSH, 1996 WL 617329, at *4 (S.D.N.Y. Oct.25, 1996) (citing *Cruz–Ochoa,* 85 F.3d at 325–26). The *Santos* court relied on language in Attorney General Reno's April 28, 1995 memorandum authorizing such departures on the ground that a defendant's agreement to deportation is "conduct not contemplated by the guidelines." *Id.* (quoting the Attorney General's memorandum at 2).