UNITED STATES of America,
Appellee,

v.

Carlos GALVEZ–FALCONI, a/k/a Davis
Tarrat, Defendant–Appellant.

Docket No. 97–1614.

United States Court of Appeals,
Second Circuit.

Argued March 12, 1999.

Decided April 12, 1999.

John A. Cirando, D.J. & J.A. Cirando, Syracuse, NY, for defendant-appellant.

Richard R. Southwick, Assistant United States Attorney, Syracuse, NY (Thomas J. Maroney, United States Attorney for the Northern District of New York, Syracuse, NY, on the brief), for appellee.

Before: OAKES, WALKER, and KEITH,* Circuit Judges.

JOHN M. WALKER, Jr.., Circuit Judge.

Defendant-appellant Carlos Galvez–Falconi appeals from the sentenced imposed by the United States District Court for the Northern District of New York (Rosemary S. Pooler, *District Judge*), following his guilty plea to one count of unlawfully reentering the United States after deportation for an aggravated felony, in violation of 8 U.S.C. § 1326(b)(2). Galvez–Falconi was sentenced in principal part to seventy-seven months' imprisonment, to be followed by two years of supervised release.

Galvez–Falconi challenges his sentence on the grounds that (1) the district court erred by declining to grant his motion for a downward departure under United States Sentencing Guidelines ("U.S.S.G.") § 5K2.0, on the basis of his willingness to consent to deportation; and (2) he was deprived of the effective assistance of counsel at sentencing when his trial counsel failed to argue that the district court had discretion to depart downward under U.S.S.G. § 5K2.0 in the absence of the government's consent to such a departure. Because we hold that, in exceptional circumstances, a district court has the authority under U.S.S.G. § 5K2.0 to grant a downward departure on the basis of a defendant's consent to deportation even in the absence of the government's consent to such a departure, and because we conclude that the record is ambiguous as to whether the district court understood its authority under U.S.S.G. § 5K2.0, we vacate Galvez–Falconi's sentence and remand to the district court for further proceedings consistent with this opinion. Accordingly, we need not reach Galvez–Falconi's ineffectiveness claim.

---

* The Honorable Damon J. Keith, Senior Judge of the United States Court of Appeals for the Sixth Circuit, *sitting by designation.*

## I.

On October 8, 1996, Galvez–Falconi was found by the United States Immigration and Naturalization Service ("INS") in the Riverside Correctional Facility in Ogdensburg, New York in the custody of the New York State Department of Correctional Services, where he was serving a state prison sentence for assault. Further investigation determined that Galvez–Falconi had previously been deported from the United States to Peru in 1991, following his conviction for the aggravated felony of criminal sale of a controlled substance in the fifth degree. *See* N.Y. Penal Law § 220.31. Galvez–Falconi did not obtain permission to reenter the United States lawfully.

On December 4, 1996, Galvez–Falconi was indicted on one count of unlawfully reentering the United States following his deportation for an aggravated felony, in violation of 8 U.S.C. § 1326(b)(2). On March 10, 1997, Galvez–Falconi pled guilty to the one-count indictment pursuant to a plea agreement.

By letter dated June 25, 1997, defense counsel moved for a downward departure, premised on Galvez–Falconi's willingness not to oppose deportation. On October 17, 1997, at defendant's sentencing, the government indicated to the district court that it was the policy of the United States Attorney in the Northern District of New York to oppose all such applications. An excerpt of the district court's colloquy with counsel follows:

**The government:** The U.S. Attorney has expressed to me, and asked me to express to you, the fact [that] the particular two-level departure which was sought by the defense in this case would apparently—would require the acquiescence of the United States. It is the policy in this district, expressed by the United States Attorney, that we will not

consent to this particular departure, generally, and also not in this case.

**The court:** Is this only in this district? It is not a nationwide policy?

**The government:** No, your Honor, my understanding of this is as follows: That ... [each] United States Attorney, individually[,] may or may not implement a policy to downwardly depart two-levels on the basis of [a defendant's] consent to deportation, but it is not a national policy in the sense [that] it is the same everywhere[.] [T]here is the option [of] each U.S. [A]ttorney in each district to implement [the policy] or not. . . .

Part of the ... reasoning ... behind the government's not acquiescing to this is that it is the belief of some people that were we to do it in one case we would be almost obligated to do it in every case. . . . [I]n this district, the U.S. Attorney has determined, at least at this time, he has chosen not to implement this.

**The court:** What I find ironic, however, is that the sentencing guidelines were enacted to provide uniformity throughout the nation, and in spite of that goal, U.S. [A]ttorneys can ... disrupt that pattern by making different decisions in each district, and on a case by case basis, as to whether to seek or consent to this procedure or not.

**The government:** ... [T]here is a long tradition in our country of prosecutorial discretion that's been exercised since nearly the beginning—

**The court:** But not at the exclusion of judicial discretion.

The district court then denied Galvez–Falconi's motion for a downward departure. This appeal followed.

## II.

### A. *Appealability of the Sentence*

As an initial matter, we note that "a sentencing court's refusal to grant a downward departure is not normally reviewable on appeal." *United States v.*

*Montez–Gaviria,* 163 F.3d 697, 701 (2d Cir.1998) (citing *United States v. Matthews,* 106 F.3d 1092, 1095 (2d Cir.1997), *United States v. Moore,* 54 F.3d 92, 102 (2d Cir.1995), *United States v. Harris,* 38 F.3d 95, 97 (2d Cir.1994), and *United States v. Piervinanzi,* 23 F.3d 670, 685 (2d Cir.1994)). We may, however, review appeals in which the defendant claims that the district court was unaware of, or misconstrued, its authority under the Guidelines to grant a downward departure. *See id.; see also* 18 U.S.C. § 3742(a)(1) ("A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence ... was imposed in violation of law."); *United States v. Sharpsteen,* 913 F.2d 59, 63 (2d Cir. 1990) (contrasting unappealability of decision not to depart when claim is that district court abused its discretion with appealability of decisions not to depart when claim is that district court misconstrued its authority under the Guidelines).

Relying on selective excerpts from the record below, such as the court's reference to "judicial discretion," the government contends that the district court was aware of its authority to depart but simply exercised its discretion not to do so on the facts presented, making its determination unreviewable on appeal. We disagree and conclude that, at the very least, the district court's remarks at sentencing create ambiguity as to whether the court understood its authority to depart on the basis of consent to deportation. In particular, we note the district court's statement near the end of its colloquy with the government to the effect that the applicability of the departure will be different from district to district, depending on whether the United States Attorney in a given district consents to such a departure. Given our conclusion in Part II.B. *infra* that the district court may, under certain circumstances, have authority to depart in the absence of the government's consent, we vacate Galvez–Falconi's sentence and remand for reconsideration of his motion for a downward

departure. *See United States v. Rivers*, 50 F.3d 1126, 1132 (2d Cir.1995); *see also Montez–Gaviria*, 163 F.3d at 703 ("When the record is ambiguous as to whether a district court has allowed a mistake of law to affect its sentencing decision, we have regularly remanded to allow the court to reconsider its decision in light of our correction of the mistake."); *United States v. Ogbondah*, 16 F.3d 498, 501 (2d Cir.1994) (remanding where there was "a real possibility" that the court misunderstood its power to depart downward).

### B. *Authority to Depart under U.S.S.G. § 5K2.0 on the basis of Defendant's Consent to Deportation*

Under U.S.S.G. § 5K2.0, a sentencing court may depart from an applicable Guideline range if "the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). "To determine whether a circumstance was adequately taken into consideration by the Commission, Congress instructed courts to 'consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.'" *Koon v. United States*, 518 U.S. 81, 92–93, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (quoting 18 U.S.C. § 3553(b)). The Commission has stated that, with the specific exceptions set forth in Guidelines §§ 5H1.10 (declaring irrelevancy of race, sex, national origin, creed, religion, and socio-economic status), 5H1.12 (lack of guidance as a youth), 5H1.4 (physical condition, including drug or alcohol dependence or abuse), and 5K2.12 (coercion and duress), it "does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." *See* U.S.S.G. ch. 1, pt. A, intro. cmt. 4(b). That said, "[i]n the absence of a characteristic or circumstance

that distinguishes a case as sufficiently atypical to warrant a sentence different from that called for under the guidelines, a sentence outside the guideline range is not authorized." U.S.S.G. § 5K2.0, Commentary; *see also Koon*, 518 U.S. at 98, 116 S.Ct. 2035 ("Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline.").

Unlike Guideline § 5K1.1, which provides, "[u]pon motion of the government," for the possibility of a downward departure where a defendant "has provided substantial assistance in the investigation or prosecution of another person who has committed an offense," nothing in the text of § 5K2.0 requires that the government move or consent to a departure otherwise warranted under that provision. And, we refuse to read such a requirement into § 5K2.0. *See United States v. Garcia*, 926 F.2d 125, 127–28 (2d Cir.1991) (holding that cooperation covered by § 5K1.1 is cooperation with the prosecution, leaving cooperation with the courts available as ground for departure in the absence of a government motion); *see also United States v. Agu*, 949 F.2d 63, 67 (2d Cir.1991) (same).

Whether a defendant's consent to deportation constitutes a "mitigating circumstance of a kind ... not adequately taken into consideration by the Sentencing Commission," U.S.S.G. § 5K2.0, is a question of first impression in this circuit, *see Montez–Gaviria*, 163 F.3d at 704–05 (noting our reservation of the question); *United States v. Zapata*, 135 F.3d 844, 847–48 (2d Cir .1998) (resolving case without deciding issue). Relying on a district court decision from the Eastern District of New York, *United States v. Ramnath*, 958 F.Supp. 99 (E.D.N.Y.1997), Galvez–Falconi contends that his agreement to stipulate to deportation would alleviate the potentially lengthy and burdensome administrative process required to deport him, thereby saving the government, and particularly the INS,

from having to expend valuable resources in the process. *See id.* at 103. This type of assistance to the effective administration of justice, Galvez–Falconi contends, provides a basis for a departure under § 5K2.0. *See id.* at 103–04 (granting, over government's objection, defendant's motion for a one-level reduction in his offense level under § 5K2.0 on the basis of defendant's stipulation to deportation).

The government counters that a downward departure for consent to deportation is generally unwarranted because (1) consent to deportation is not a mitigating factor of a kind not contemplated by the Sentencing Commission, and (2) the benefit to the United States is minimal because deportation is virtually certain even in the absence of such consent. In support of its contention, the government points to the evolving position of the United States Attorney General on the question of whether downward departures are appropriate when a defendant stipulates to deportation.

In an April 1995 memorandum, the Attorney General directed the Justice Department to take steps to expedite the deportation of alien defendants after they had completed service of their sentences, and authorized United States Attorneys to recommend downward departures for defendants who stipulated to deportation and waived their right to administrative hearings and judicial review. Thereafter, the United States Attorneys for the Southern, Eastern, and Western Districts of New York and the District of Connecticut agreed to support such departures on a trial basis. As noted above, the record in this case suggests that the United States Attorney for the Northern District of New York has established a policy of opposing all such departures.

Then, in November 1997, the Acting Assistant Attorney General for the Criminal Division of the Justice Department sent to all federal prosecutors with responsibility for cases involving alien defendants a memorandum ("the 1997 Memorandum")

announcing that recent changes in the immigration laws "had cast doubt on whether such departures remained appropriate." *Montez–Gaviria,* 163 F.3d at 704 (referring to the 1997 Memorandum). In particular, the 1997 Memorandum noted that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 1570, 1701–1703 (1996), "'streamlin[ed] the removal process' for many alien defendants, thus 'substantially reduc[ing] the benefit the Government derives solely from an alien's concession of alienage and stipulation to removal.'" *Id.* at 704 (alterations in original) (quoting the 1997 Memorandum).

Thereafter, the United States Attorneys for the Southern and Eastern Districts of New York notified the Chief Judges of their Districts in July of 1998 that they were discontinuing the practice of supporting such departures on the ground that they no longer believed such departures to be warranted. *See* Letter Brief of the United States Attorney for the Northern District of New York, dated Mar. 10, 1999, at 2. Another factor that weighed in the government's decision to end the practice of agreeing to downward departures for stipulated deportation was the First Circuit's decision in *United States v. Clase–Espinal,* 115 F.3d 1054, 1058–59 & n. 6 (1st Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 384, 139 L.Ed.2d 299 (1997).

In *Clase–Espinal,* the First Circuit held that, "at least in the absence of a colorable, nonfrivolous defense to deportation," downward departures for stipulated deportation are not authorized by § 5K2.0. *Id.* at 1059. The court in *Clase–Espinal* reasoned that the overwhelming majority of alien criminal defendants are deported voluntarily, *see id.* at 1058, n. 4 (citing statistics suggesting that 97 percent of all apprehended aliens are expelled without a deportation hearing), making their assistance to the government in consenting to deportation of such limited value as to preclude a finding that the consent presents a "mitigating circumstance of a kind

not adequately considered by the Commission," *id.* at 1059 (emphasis omitted) ("Absent some mitigating circumstance not suggested here, no substantial atypicality is demonstrated where an alien defendant simply stipulates to deportation and no nonfrivolous defense to deportation is discernible.").

The Third Circuit has adopted the First Circuit's reasoning in *Clase–Espinal, see United States v. Marin–Castaneda,* 134 F.3d 551, 555 (3d Cir.1998) ("a defendant without a non-frivolous defense to deportation presents no basis for downward departure under section 5K2.0 by simply consenting to deportation"), *cert. denied,* ––– U.S. –––, 118 S.Ct. 1855, 140 L.Ed.2d 1103 (1998), while adding the requirement that the United States Attorney recommend such a departure before it is warranted under § 5K2.0, *see id.* at 556. In contrast, the Eighth Circuit, with no discussion, upheld the validity of departures for stipulating to deportation in *United States v. Cruz–Ochoa,* 85 F.3d 325, 325–26 (8th Cir.1996). The *Cruz–Ochoa* court remanded for resentencing upon finding that the district court "erred as a matter of law by incorrectly believing that it could not depart downward from the guidelines on the basis of defendant's waiver and consent to administrative deportation." *Id.*

■ We agree with the First Circuit that a defendant seeking a departure under § 5K2.0 for consenting to deportation must present a colorable, nonfrivolous defense to deportation, such that the act of consenting to deportation carries with it unusual assistance to the administration of justice. In the absence of such a showing, the act of consenting to deportation, alone, would not constitute a "circumstance that distinguishes a case as sufficiently atypical to warrant" a downward departure. U.S.S.G. § 5K2.0. Where, however, a defendant makes such a showing, we conclude that a district court has the authority under § 5K2.0 to depart downward. As indicated above, we will not read into § 5K2.0 a further requirement that the

government move for, or otherwise support, a departure on the basis of a defendant's consent to deportation before a district court has the authority to depart.

Whether the defendant has presented a colorable, non-frivolous defense to deportation that would, in fact, substantially assist in the administration of justice is a decision that, of course, must be made in the first instance by the district court. Because we believe, for the reasons stated in Part II.A. *supra,* that the record is ambiguous on the question of whether the district court was aware of its authority to grant a downward departure on the basis of the defendant's consent to deportation in the absence of the government's consent, we vacate Galvez–Falconi's sentence and remand to the district court for reconsideration of his motion.

Vacated and remanded.