# United States Court of Appeals
## For the First Circuit

---

No. 01-1695

UNITED STATES OF AMERICA,

Appellee,

v.

ROMULO EMILIO VASQUEZ,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, U.S. District Judge]

---

Before

Selya, Circuit Judge,

Stahl, Senior Circuit Judge,

and Lipez, Circuit Judge.

---

Robert D. Watt, Jr. on brief for appellant.
Margaret E. Curran, United States Attorney, Donald C.
Lockhart and Ira Belkin, Assistant United States Attorneys, on
brief for appellee.

---

February 6, 2002

---

**SELYA, Circuit Judge.** This appeal requires us to address, for the first time, a question endemic to the sentencing of deportable aliens convicted of federal criminal offenses: Do the adverse collateral consequences that an incarcerated defendant may experience by reason of his status as a deportable alien collectively constitute a permissible ground for a downward departure under USSG §5K2.0? With regard to illegal reentry cases in which sentence is imposed pursuant to 8 U.S.C. § 1326(a) and USSG §2L1.2, we answer that question in the negative. That answer, in turn, prompts us to affirm the sentence imposed in this case.

The facts are straightforward. In 1991, defendant-appellant Romulo Emilio Vasquez, a Dominican national, was convicted in a Rhode Island state court of assault with a dangerous weapon. The Immigration and Naturalization Service (INS) deported him after he had served a term of immurement. The appellant thereafter returned illegally to the United States and again ran afoul of local law enforcement. This time, he was arrested for, and convicted of, trafficking in cocaine.

These transgressions brought the appellant to the renewed attention of the INS. On November 8, 2000, a federal grand jury handed up an indictment charging that the appellant, a previously-deported alien, had been found in Rhode Island

-3-

without having obtained the consent of the Attorney General to reapply for admission into the United States, and that, therefore, he had violated 8 U.S.C. § 1326.[1] The appellant pleaded guilty to that charge (which we shall call "illegal reentry").

The principal sentencing guideline applicable to illegal reentry cases is USSG §2L1.2 (governing, inter alia, unlawful reentry into the United States after a previous deportation). The parties agree that this guideline controls, and that, under it, the appellant faced a sentencing range of 46 to 57 months (adjusted offense level 21; criminal history category III). At the disposition hearing, the appellant sought a downward departure on the ground that, as a deportable alien, he would suffer certain adverse collateral consequences during his incarceration (e.g., he claimed that he would be ineligible for assignment to a minimum-security prison camp or for certain rehabilitative programs offered by the Bureau of Prisons). The district court refused to oblige, concluding that it lacked authority to depart on the basis of such collateral

_____

[1]With exceptions not relevant here, the statute of conviction provides that any alien who, after having been deported, "enters, attempts to enter, or is at any time found in, the United States" without the Attorney General's express consent to apply for his readmission shall be guilty of a federal crime and punished as provided by law. 8 U.S.C. § 1326(a)(2).

consequences. The court thereupon sentenced the appellant at the bottom of the guideline sentencing range. This appeal ensued.

Appellate review of a sentencing court's decision granting a departure is for abuse of discretion. Koon v. United States, 518 U.S. 81, 98-100 (1996); United States v. Snyder, 136 F.3d 65, 67 (1st Cir. 1998). Conversely, a sentencing court's decision not to depart is largely unreviewable. See United States v. Pierro, 32 F.3d 611, 619 (1st Cir. 1994). There are, however, a few exceptions to this rule. One exception is for cases in which the sentencing court's refusal to depart stems from a misperception of its authority under the law. See id.; see also United States v. Ortiz-Santiago, 211 F.3d 146, 148 (1st Cir. 2000) (explaining that appellate jurisdiction lies if "the putative appellant can show that the district court acted in the mistaken belief that it lacked the ability to depart"). The question of whether the guidelines countenance a particular ground for departure goes to the district court's authority, and, thus, is reviewable. Because the resultant question is a question of law, Koon, 518 U.S. at 100, we subject the district court's determination that it lacked authority to depart to de novo review and proceed to "determine the existence vel non of

legal error without special deference to the sentencing court's views," Snyder, 136 F.3d at 67.

In this instance, the departure request had its genesis in the sentencing guidelines' general departure provision, USSG §5K2.0. Echoing 18 U.S.C. § 3553(b), that provision empowers the sentencing court to deviate from the guideline sentencing range "if the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." USSG §5K2.0 (citation and internal quotation marks omitted). Even so, not every aggravating or mitigating circumstance has the capability of supporting a departure: to serve that purpose, "the circumstance must render the case atypical and take it out of the heartland for which the applicable guideline was designed." United States v. Dethlefs, 123 F.3d 39, 44 (1st Cir. 1997) (citation and internal quotation marks omitted).

Here, the appellant's case hinges on whether the sentencing court correctly concluded that the guidelines did not permit it to honor the appellant's identified ground for departure. We turn, then, to an evaluation of that conclusion. In conducting that evaluation, our inquiry centers on whether

the identified ground for departure — the feature on which the appellant relies to distinguish his case from the mine-run — "potentially, take[s] [the case] outside the Guidelines' 'heartland,'" thus "mak[ing] of it a special, or unusual, case." Koon, 518 U.S. at 95 (quoting United States v. Rivera, 994 F.2d 942, 949 (1st Cir. 1993)).

The distinguishing feature identified by the appellant here is the panoply of adverse collateral penal consequences that flow from his deportable status. Because the sentencing guidelines never mention this incident of the incarceration of an alien convicted of an illegal reentry, the question reduces to whether the Sentencing Commission nevertheless took the identified feature into account in its formulation (and if so, to what end). Dethlefs, 123 F.3d at 44. To solve this conundrum, we must consider whether that feature suffices to remove a case from the heartland established by the guidelines as they apply to the offense of conviction. Koon, 518 U.S. at 95; Dethlefs, 123 F.3d at 44. We perform this task mindful that the Court has predicted that departures premised on such unmentioned circumstances will be rare. Koon, 518 U.S. at 95.

Because this is an illegal reentry case — and we limit our holding accordingly[2] — this question implicates the theory and structure of USSG §2L1.2. That guideline covers offenses involving persons who unlawfully enter into, or unlawfully remain in, the United States. By definition, then, the only persons sentenced under that guideline will be deportable aliens. This fact is nose-on-the-face plain, and the Sentencing Commission, in constructing the guideline, must have taken into account not only the immigration status of prospective offenders but also the collateral consequences that would flow from that status within the federal prison system. This is powerful evidence that the distinguishing feature upon which the appellant relies is outside the compass of the departure decision.

The case law bears out this intuition. Although the appellant's argument is new to us, it is not new to the federal appellate courts as a whole. An unbroken line of cases holds

_____

[2]One court has indicated that a downward departure "may be appropriate where the defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his sentence." United States v. Smith, 27 F.3d 649, 655 (D.C. Cir. 1994). But Smith involved a sentence imposed for a drug-trafficking offense rather than for an illegal reentry offense. For the reasons explicated in the text, illegal reentry cases are functionally different as they pertain to this point. Hence, this case does not require us to take a view as to the continuing vitality of the Smith court's holding (which, in all events, antedated Koon).

that where, as here, a defendant is sentenced under USSG §2L1.2 following his conviction for an illegal reentry offense, adverse collateral penal consequences of the type and kind feared by the appellant are not a cognizable basis for a downward departure. See United States v. Martinez-Carillo, 250 F.3d 1101, 1106-07 (7th Cir.), cert. denied, 122 S. Ct. 285 (2001); United States v. Cardosa-Rodriquez, 241 F.3d 613, 614 (8th Cir. 2001); United States v. Garay, 235 F.3d 230, 232-34 (5th Cir. 2000), cert. denied, 121 S. Ct. 1633 (2001); United States v. Martinez-Ramos, 184 F.3d 1055, 1057-59 (9th Cir. 1999); United States v. Ebolum, 72 F.3d 35, 37-39 (6th Cir. 1995).

These decisions rest on bedrock. Deportable alien status is a universal concomitant of crimes such as illegal reentry, and, thus, common sense dictates that such status must have been weighed by the Sentencing Commission in formulating USSG §2L1.2 and setting the attendant offense levels. This means, of course, that far from being a special, unusual, or atypical feature of an illegal reentry case, susceptibility to deportation is a common thread that runs through all such cases. Without more, this circumstance (and, by extension, the collateral consequences that flow from it) is insufficient to take an illegal reentry case out of the heartland associated with USSG §2L1.2.

If further support for this conclusion is needed — and we doubt that it is — we note that our resolution of this question is foreshadowed by our earlier decision in United States v. Clase-Espinal, 115 F.3d 1054 (1st Cir. 1997). There, the defendant argued (and the district court agreed) that his willingness to stipulate to deportability was an appropriate basis on which to depart downward. Id. at 1057. We reversed, concluding that the Sentencing Commission must have known that many of those persons sentenced for criminal offenses in the federal courts are deportable aliens. Id. at 1057-58. Thus, the Commission must have been "fully cognizant that virtually all alien criminal defendants, convicted under 8 U.S.C. § 1326(a) and sentenced pursuant to U.S.S.G. § 2L1.2, would be subject to deportation and that many undoubtedly would stipulate to deportation." Id. at 1059. Based on this reasoning, we held that the defendant's willingness to accede to deportation was not a sufficiently atypical circumstance to justify a downward departure (at least in the absence of a colorable defense to deportation). Id.

The case at bar is a fair congener. We think it is equally certain that the Sentencing Commission realized that all persons convicted under 8 U.S.C. § 1326(a) and sentenced pursuant to USSG § 2L1.2 would be deportable (and, thus, subject

-10-

to certain disadvantages within the federal prison system). It follows inexorably that the Commission must have taken that factor into account in framing the relevant guidelines.

The appellant has two rejoinders. First, he notes that both the statute of conviction, 8 U.S.C. § 1326, and the pivotal guideline, USSG §2L1.2, refer to aliens who have previously been deported (that is, they speak only in the past tense) and do not refer to an alien's <u>present</u> status. He seizes upon this usage to suggest the obvious: that having been deported in the past is not necessarily the same as being presently deportable. For our purposes, however, this is a distinction without a difference: since the appellant's present status as a deportable alien flows ineluctably from his previous deportation (coupled, of course, with his subsequent unlawful reentry into the United States), the past and present merge. Put another way, the appellant's status as a deportable alien is an inherent element of the crime that he committed and to which both the statute and the guideline apply, and so this element must have been taken into consideration by the Sentencing Commission in constructing USSG §2L1.2. <u>See</u> <u>Martinez-Ramos</u>, 184 F.3d at 1058; <u>United States</u> v. <u>Gonzalez-Portillo</u>, 121 F.3d 1122, 1124-25 (7th Cir. 1997).

Second, the appellant argues that if the sentencing guidelines do not expressly forbid downward departures based on a particular circumstance, the district court must necessarily be authorized to depart on the basis of that circumstance. Building on this shaky foundation, he posits that because the Sentencing Commission eschewed any mention of the adverse collateral penal consequences attendant to deportable status, that circumstance must be a lawful basis for departure. We do not agree with either the appellant's premise or his conclusion.

The Supreme Court has made it crystal clear that impermissible bases for departure need not be invoked by name in the sentencing guidelines. Koon, 518 U.S. at 110. Forbidden factors may be implicit as well as explicit. United States v. Tappin, 205 F.3d 536, 542 (2d Cir.), cert. denied, 531 U.S. 910 (2000). Substantial case law emanating from this court subsequent to Koon validates this point. E.g., United States v. Maldonado, 242 F.3d 1, 4-5 (1st Cir. 2001) (holding that the cost of incarcerating a defendant who will ultimately be deported is categorically excluded from consideration as a lawful basis for a downward departure); Snyder, 136 F.3d at 68 (holding that even though the Sentencing Commission has not proscribed federal-state sentencing disparity as a ground for

-12-

departure, that circumstance "is never a valid basis for a downward departure"); <u>Dethlefs</u>, 123 F.3d at 49 (holding that the fact of a straight guilty plea, without more, is categorically excluded, by implication, as a basis for a downward departure); <u>Clase-Espinal</u>, 115 F.3d at 1060 (holding that willingness to stipulate to deportation is categorically excluded as a ground for departure).

To sum up, the ground for departure advocated by the appellant is insufficient as a matter of law to distinguish his case from the mine-run of illegal reentry offenses subject to the strictures of USSG §2L1.2. If the law were otherwise, then every defendant in an illegal reentry case automatically would qualify for such a departure, thus emptying the "heartland" concept of its essential meaning. We cannot place our imprimatur upon so counterintuitive a result.

We need go no further. We hold that in the case of defendants sentenced for illegal reentry under 8 U.S.C. § 1326(a) and USSG §2L1.2, a district court may not depart downward on the basis that deportable status ostensibly carries with it certain adverse collateral penal consequences.[3] Because

_____

[3]We do not reach (and, therefore, express no opinion on) the issue of whether a deportable alien does, in fact, suffer adverse penal consequences simply by virtue of his status. We

-13-

the court below correctly anticipated this holding, it acted appropriately in rejecting the appellant's entreaty.

**Affirmed**.

---

similarly abjure the related issue of whether such consequences, if they exist at all, are significant.