UNITED STATES of America

v.

Ranjit RAMNATH, Defendant.

No. CR–96–0012 (CPS).

United States District Court,
E.D. New York.

Feb. 27, 1997.

MEMORANDUM AND ORDER

SIFTON, Chief Judge.

Defendant Ranjit Ramnath was convicted of importation of cocaine and possession of cocaine with intent to distribute. His base offense level for sentencing purposes is 24. Defendant Ramnath seeks, *inter alia,* a one point downward departure because he has

agreed to stipulate to his own deportation after his term of incarceration. This opinion addresses that issue.

For the reasons stated below, the departure application is granted, and defendant's base offense level will be reduced by one point.

## BACKGROUND

Aliens convicted of trafficking in a controlled substance are aggravated felons, 8 U.S.C. § 1101(a)(43)(B), and are thus deportable, 8 U.S.C. § 1251(a)(2)(A)(iii),[1] upon completion of their prison sentences, 8 U.S.C. § 1252a(a)(3)(B). The Immigration and Naturalization Service ("INS") is responsible for deporting aggravated felons and may detain the aggravated felons until their deportation. Starting April 1, 1997, the INS will lose its discretion not to detain aggravated felons and will be required to detain until deportation all aggravated felons who have completed their periods of incarceration. See Act of Sept. 30, 1996, Pub.L. No. 104–208, 110 Stat. 3009. Such detention should, as a legal matter, occur rarely because the Attorney General is under a statutory duty to "provide for the initiation and, to the extent possible, the completion of deportation proceedings and any administrative appeals thereof in the case of any alien convicted of an aggravated felony before the alien's release from incarceration for the underlying aggravated felony." 8 U.S.C. § 1252a(a)(3)(A).

As a practical matter, the deportation of an alien convicted of an aggravated felony is a lengthy administrative process. First, the alien receives an order to show cause as to why he should not be deported. The order to show cause must be served on the alien and must provide adequate notice of the charges against him. See 8 C.F.R. § 242.1(a)-(c). Therefore, the alien is entitled to a hearing before an immigration judge. At the hearing, the alien has the right to be represented by counsel, to hear the evidence against him, and to present evidence. See 8 C.F.R. § 242.16. Once the immigration judge has made the factual and legal findings necessary for deportation, the alien has the right to appeal that decision to the Board of Immigration Appeals. See 8 C.F.R. § 242.21(a). The Board's decision is the final administrative decision. While judicial review of the Board's decisions is generally available, there is no judicial review for those aliens found deportable because of a criminal conviction involving the trafficking of controlled substance. See 8 U.S.C. § 1252(a)(2)(C).

The lengthy deportation process has created substantial administrative problems for the INS. The INS has been unable to meet its statutory responsibility to deport aggravated felons expeditiously after their term of incarceration ends. According to the United States General Accounting Office, aliens convicted of a crime spent an average of 59 days in INS detention facilities after their term of incarceration ended and prior to their deportation. See United States v. Restrepo, 802 F.Supp. 781, 784 (E.D.N.Y.1992) (citing United States General Accounting Office, Immigration Control: Immigration Policies Affect INS Detention Efforts 25 (1992)), rev'd, 999 F.2d 640 (2d Cir.1993).[2]

In addition to the difficulty in expeditiously deporting aliens convicted of a crime, the lengthy deportation process impacts INS' ability to detain all aliens convicted of a crime until deported. Despite the statutory mandate to do so, effective April 1, 1997, the INS lacks the space necessary to detain all of those aliens who have completed their terms of incarceration and who have not completed the deportation process. For 1997, INS plans to detain and deport 93,000 criminal and illegal aliens but has only 9,000 beds available in its detention facilities. See Oversight Hearing on the Removal of Criminal and Illegal Aliens Before the Subcomm. on

---

**1.** On April 1, 1997, Section 1251 will be renumbered as Section 1227. See Act of Sept. 30, 1996, Pub.L. No. 104–208, 110 Stat. 3009.

**2.** Judge Korman sought at the time these administrative problems first came to light to depart from the Sentencing Guidelines for one such convicted alien in order to compensate for the additional time that he would serve in INS detention. See United States v. Restrepo, 802 F.Supp. 781 (E.D.N.Y.1992). The Second Circuit disallowed the downward departure. See United States v. Restrepo, 999 F.2d 640 (2d Cir.1993).

*Immigration and Claims of the House Comm. on the Judiciary,* 104th Cong. (1996) (statement of David S. Martin, General Counsel, Immigration and Naturalization Service). INS' inability to meet its statutory duty of mandatory detention of aggravated felons led the INS to ask Congress to restore the discretion once vested in the INS to decide whether or not an alien convicted of a crime should be detained. *See id.*

The administrative problems discussed above involve only contested deportation proceedings. By not contesting his deportation, the alien can himself significantly reduce the time and complexity of the deportation process. While the INS must still issue an order to show cause as to why the individual should not be deported, 8 C.F.R. § 242.1(a), an alien can stipulate to his own deportation. In the stipulation the alien concedes his deportability, waives his right to a hearing, waives all discretionary forms of relief from deportability, and waives his right to appeal the immigration judge's order. *See* 8 C.F.R. § 3.25(b). The immigration judge, without the presence of either the alien or the representative from the government, examines the stipulation and issues an order of deportation if it appears that the alien voluntarily, knowingly, and intelligently entered into the stipulation. *See id.*

Because of the advantages of an uncontested deportation, the United States Attorney for the Eastern District of New York implemented a policy by which as part of plea negotiations criminal defendants were encouraged to stipulate to their deportability at the same time. *See* Letter from Zachary W. Carter, United States Attorney, to Hon. Charles P. Sifton, Chief Judge of the Eastern District of New York 1 (Jan. 29, 1996) [*hereinafter* Letter from Zachary Carter].[3] "The goal of these plea provisions is to expedite the deportations of criminal aliens, thereby saving government and judicial resources and minimizing the time which criminal aliens must spend in INS custody awaiting deportation after they have completed their sentences." *Id.*

In exchange for the stipulation of deportability, the prosecutors themselves asked the sentencing court to give the defendant a one-level downward departure from the Sentencing Guidelines. *See id.* at 3. The asserted rationale for requesting the downward departure is that the United States Attorney "believe[s] that a downward departure is justified on the ground that the defendant's acknowledgement of deportability with respect to his or her immigration status, thereby obviating deportation proceedings, is a sort of acceptance of responsibility not contemplated by the Guidelines." *Id.*

Here, Ramnath has agreed to stipulate to his own deportation. However, the prosecutor has not requested a onepoint reduction in Ramnath's base offense level because Ramnath did not plead guilty but instead exercised his right to go to trial.

## DISCUSSION

A defendant must be sentenced within the range of punishments determined by the United States Sentencing Guidelines (the "Guidelines") unless the sentencing court finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). The Guidelines' introductory policy statement elaborates:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S. Sentencing Guidelines Manual § 1A4(b) (1995).

 The Supreme Court has approved of an approach to sentencing departures de-

---

3. The policy was developed after Attorney General Janet Reno requested the Department of Justice to take steps to expedite the deportation of aliens convicted of a crime. *See* Letter from Zachary Carter at 1.

veloped by the First Circuit. *See Koon v. United States,* —— U.S. ——, ——, 116 S.Ct. 2035, 2045, 135 L.Ed.2d 392 (1996). First, the sentencing court is to determine whether any special or unusual circumstances exist in a particular case. *See United States v. Rivera,* 994 F.2d 942, 949 (1st Cir.1993). Then the sentencing court is to determine whether or not the Guidelines forbid departure based on those specific special or unusual circumstances. *See Koon,* —— U.S. at —— – ——, 116 S.Ct. at 2044–45; *Rivera,* 994 F.2d at 949. A court may not depart from the Guidelines because of race, sex, national origin, creed, religion, socio-economic status, lack of guidance as a youth, drug or alcohol dependency, or economic hardship. *See Koon,* —— U.S. at ——, 116 S.Ct. at 2044. Aside from those above listed factors, there is no limitation on the types of circumstances which possibly could warrant a departure from the Guidelines. *See id.*

■ Once it is determined that special or unusual circumstances that are not forbidden reasons for departure exist in a particular case, the question remains as to whether or not the sentencing court should depart from the Guidelines in that instance. To make that determination, the sentencing court should ask whether or not the circumstances are of a kind not adequately taken into consideration by the Guidelines. *See Koon,* —— U.S. at —— – ——, 116 S.Ct. at 2044–45.

Even at this stage, the Guidelines can provide some guidance to sentencing courts because the Guidelines encourage or discourage the use of certain factors for departure. For example, the Guidelines list some factors that generally are relevant to departure decisions yet were not fully accounted for in the Guidelines. *See Koon,* —— U.S. at ——, 116 S.Ct. at 2045. The Guidelines also list some factors such as family responsibilities that may on occasion be worthy of departure but yet are not ordinarily relevant to sentencing. *See id.*

■ In Ramnath's case, there is a special and unusual situation that may be relevant to sentencing. The INS has a statutory duty to attempt to deport Ramnath. The INS is under a further statutory obligation to attempt to complete the deportation process prior to the end of Ramnath's term of incarceration or alternatively to detain Ramnath for any period of time that exists between the end of his incarceration and his deportation. It is altogether likely that the INS will be unable to fulfill the statutory duties in this and similar cases without Ramnath's assistance.

The government has recognized this unique situation when it adopted its policy of having the prosecutor request a one-point reduction in a defendant's offense level if that defendant stipulates to his own deportation. Here, however, the prosecutor argues that because Ramnath did not plead guilty, Ramnath should not be given a one-point reduction in his base offense level. The government's argument rests on a claim that the reduction is based on the defendant's acceptance of responsibility of a type not accounted for in the Guidelines. Those who are convicted after trial are not entitled to a one-point reduction even though they, like those who pled guilty, are entering into a stipulation consenting to their deportation.

However, the court, not the prosecutor, decides on the legal basis for departure. The basis on which this Court has departed in the past for aliens stipulating to voluntary departure is not extraordinary acceptance of responsibility but instead the substantial assistance given by the defendant to the INS in assisting in his own speedy deportation. While those who plead guilty may well accept greater responsibility for their crimes than those who are convicted, the acceptance demonstrated by a guilty plea is a factor that has been adequately accounted for in the Guidelines. Individuals who accept responsibility for their crimes can gain a two to three level downward adjustment of their offense levels through the application of Guideline Section 3E1.1.

The fact that a defendant agrees to be deported after a guilty plea does not logically mean that he is accepting more responsibility for the consequences of his actions than an individual who recognizes his own deportability following a jury's finding of guilt for an aggravated felony. The INS must deport both individuals. Both individuals accept

that one of the consequences of being an aggravated felon is that one will face a deportation procedure.

The principal result of an aggravated felon stipulating to his own deportation, as well as the principal basis on which the Court has departed in the past, is a substantial reduction in the amount of time, effort, and resources the INS must spend in order to meet its statutory duties. Without the stipulation, the INS will in all likelihood fail to meet the requirements placed on it by Congress. With the stipulation, the INS can fulfill its statutory duties with regard to the individual who is stipulating to deportation and, at the same time, gain the benefit of using the resources that would have had to have been used to deport the stipulating individual on other individuals who are contesting their deportation.

Since assistance to the government is not one of the listed forbidden grounds for departure, it is next appropriate to consider whether or not the Guidelines adequately account for the type of assistance to the government given by Ramnath.

■ One section of the Guidelines, Section 5K1.1, explicitly addresses one type of assistance provided by defendant to the government.

> Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

U.S. Sentencing Guidelines § 5K1.1 (1995). Section 5K1.1 is unique in that, while is approves of a departure based on a defendant's actions, it also expressly conditions such a departure upon the prosecutor's consent. *See United States v. Reina*, 905 F.2d 638, 640 (2d Cir.1990). Therefore, without the prosecutor's consent, a sentencing court may not deviate from the Guidelines based on any special or unusual circumstances that could assist the government in the investigation or prosecution of another. *See United States v. Khan*, 920 F.2d 1100, 1107 (2d Cir.1990).

■ Section 5K1.1 does not, however, prevent a sentencing court from departing from the Guidelines due to other forms of assistance that a defendant may give. For example, the Second Circuit in *United States v. Garcia* stated that, if a defendant has assisted the judicial system by engaging in "activities facilitating the proper administration of justice in the District Courts," the sentencing court may depart from the Guideline sentence. *United States v. Garcia*, 926 F.2d 125, 127 (2d Cir.1991). The Second Circuit has also recognized that *Garcia* is not a narrow holding and that "cooperation with the government in respects other than the prosecution of others or cooperation with the judicial system can, in appropriate circumstances, warrant a departure notwithstanding the absence of a Government motion." *United States v. Agu*, 949 F.2d 63, 67 (2d Cir. 1991).

Turning to the circumstances of this case, Ramnath has provided substantial assistance to the government by agreeing to stipulate to his own deportation. Ramnath's stipulation is not remotely related to the type of assistance that Section 5K1.1 encompasses. The stipulation cannot in any way help in the investigation or prosecution of anyone. Therefore, Section 5K1.1 and its requirement of prosecutorial consent do not control this case.

While the Guidelines have not accounted for the particular type of assistance that Ramnath provided to the government, the very existence of Section 5K1.1 indicates that the Guidelines encourage departures due to a defendant's assistance to the government. Because assistance to the government is an encouraged grounds for departure, if the particular special or unusual circumstances of a case demonstrate that the defendant did provide such assistance to the government in a fashion not considered by the Sentencing Commission, "the court would likely depart" based on that special or unusual assistance. *See Rivera*, 994 F.2d at 948.

Here, Ramnath has agreed to stipulate to his own deportation thereby providing substantial assistance to the INS. Due to this behavior, a departure from the Guidelines is warranted. Therefore, Ramnath will be giv-

en a one-level reduction from his base offense.

The Clerk is directed to mail a copy of the within to all parties.

SO ORDERED.