**UNITED STATES of America**

**v.**

**Maria de la Luz ANGEL-MARTINEZ.**

**Criminal No. 97-300.**

United States District Court,
D. New Jersey.

Dec. 15, 1997.

**476**

Faith S. Hochberg, United States Attorney, V. Grady O'Malley, Senior Litigation Counsel, Assistant United States Attorney, Newark, NJ, for U.S.

Richard Coughlin, Federal Public Defender, Lori M. Koch, Assistant Federal Public Defender, Camden, NJ, for Defendant, Maria de la Luz Angel-Martinez.

## OPINION

ORLOFSKY, District Judge.

Once again a "drug-courier," a pawn of the international drug trade, stands before this Court awaiting her sentence and once again this Court must evaluate its authority to depart from the sentence range prescribed by the United States Sentencing Commission Guidelines Manual (the "Guidelines"). Having pled guilty to smuggling heroin into the United States, Defendant has moved for downward departures from the applicable guideline range on three separate grounds, including two grounds based upon her status as a deportable alien. The collision between a defendant's alienage and the Guidelines has divided the Circuit Courts of Appeals throughout the country.

Specifically, this motion requires resolution of the following issues: (1) whether a sen-

tencing court is authorized to depart from the applicable guideline range on the basis of an alien defendant's offer to stipulate to her deportability at sentencing;[1] (2) whether a deportable alien's ineligibility for pre-release confinement in a halfway house or similar facility constitutes disparate, harsher treatment under the Guidelines warranting a downward departure;[2] and (3) whether Defendant's conduct in this case constitutes "aberrant behavior" warranting a downward departure. For the reasons set forth below, I conclude that none of the grounds advanced by Defendant warrants a downward departure.

## I. BACKGROUND

The following undisputed facts are set forth in the presentence report. *See* U.S.S.G. § 6B1.4(d). Defendant, Maria de la Luz Angel–Martinez (de Isaza), owned a furniture store in Bogota, Columbia. In November of 1996, Defendant went to the United States Embassy in Bogota to apply for a visa to conduct business in the United States with an eye toward exporting her furniture to America. While waiting for a bus outside the embassy, Defendant was approached by two unidentified men who initiated a conversation with her. During the course of this conversation, Defendant told the men of her financial difficulties and that she was applying for an American visa.

The men offered to pay her airfare to the United States and $10,000 in cash if she would transport 500 grams of heroin to the United States for them. Defendant gave them her business card and spoke with them on several subsequent occasions to discuss the details of the transaction. Defendant

---

**1.** *Compare United States v. Clase–Espinal,* 115 F.3d 1054 (1st Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 384, 139 L.Ed.2d 299 (1997) (alien's stipulation to deportation is not a permissible basis for departure) *with United States v. Cruz–Ochoa,* 85 F.3d 325 (8th Cir.1996) (alien's stipulation to deportation is a permissible basis for departure) *and United States v. Ramnath,* 958 F.Supp. 99 (E.D.N.Y.1997) (alien's stipulation to deportation is an encouraged basis for departure).

**2.** *Compare United States v. Restrepo,* 999 F.2d 640 (2d Cir.) (alien's ineligibility for pre-release confinement is not a permissible basis for depar-

ture), *cert. denied,* 510 U.S. 954, 114 S.Ct. 405, 126 L.Ed.2d 352 (1993), *United States v. Nnanna,* 7 F.3d 420 (5th Cir.1993) (same), *United States v. Mendoza–Lopez,* 7 F.3d 1483 (10th Cir.1993) (same), *cert. denied,* 511 U.S. 1036, 114 S.Ct. 1552, 128 L.Ed.2d 201 (1994) *and United States v. Veloza,* 83 F.3d 380 (11th Cir.1996) (same) *with United States v. Smith,* 27 F.3d 649 (D.C.Cir. 1994) (alien's ineligibility for pre-release confinement is a permissible basis for departure), *United States v. Farouil,* 124 F.3d 838 (7th Cir.1997) (same) *and United States v. Charry Cubillos,* 91 F.3d 1342 (9th Cir.1996) (same).

hesitated when she learned that she would be required to swallow pellets of heroin, but ultimately agreed to do so.

On December 7, 1996, Defendant was arrested at Newark International Airport in New Jersey. During an interview with, and a limited search by, United States Customs Service Inspectors, Defendant admitted to inserting and ingesting controlled substances into her body. Ultimately, 352.1 grams of heroin were found within Defendant's body.

On February 19, 1997, Defendant and the government executed a written plea agreement and on May 30, 1997, Defendant pled guilty to a one-count Information charging her with the knowing and intentional importation of approximately 352 grams of heroin into the United States in violation of 21 U.S.C. §§ 952(a), 960. There is no evidence in the record that Defendant has ever engaged in other illegal activities.

## II. GUIDELINES ISSUES

Finding no potential violations of the *Ex Post Facto* Clause of the U.S. Constitution because none of the applicable Guidelines has changed since the date of the offense in any way which might yield a harsher result, I will apply the Guidelines presently in effect. *See* U.S.S.G. § 1B1.11; *United States v. Brannan*, 74 F.3d 448, 450 nn. 1, 2 (3d Cir.1996).

### A. Base Offense Level

Defendant pled guilty to knowingly and intentionally importing approximately 352 grams of heroin into the United States in violation of 21 U.S.C. §§ 952(a), 960. Thus, Defendant's sentence is subject to the provisions of U.S.S.G. § 2D1.1. The offense here involved at least 100 grams, but less than 400 grams, of heroin. Therefore, Defendant's

base offense level is 26. *See* U.S.S.G. §§ 2D1.1(a)(3), (c)(7).

### B. Specific Offense Characteristics

Although 21 U.S.C. § 960(b)(2)(A) requires a mandatory minimum 5 year term of imprisonment, Congress and the Commission have provided a "safety-valve" for defendants who meet certain criteria.[3] In this case, the government and Defendant have stipulated to the existence of three of the relevant criteria. Although this Court is not bound by them, *see* U.S.S.G. § 6B1.4(d), in light of the circumstances of this case, I accept the stipulations contained in the plea agreement. Based upon a computation of Defendant's criminal history points and upon the government's oral representations at sentencing, I find that Defendant satisfies the remaining two requirements. *See* 18 U.S.C. §§ 3553(f)(1), (5); U.S.S.G. §§ 5C1.2(1), (5).

This allows the Court to impose a sentence in conformity with the applicable guideline range without regard to the mandatory minimum term set forth in 21 U.S.C. § 960(b)(2)(A). *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. In addition, Defendant's satisfaction of the "safety-valve" criteria warrants a 2 level decrease in her offense level. *See* U.S.S.G. § 2D1.1(b)(4).

### C. Role in the Offense

As noted above, Defendant and the government have stipulated that Defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines, and that Defendant was not engaged in a continuing criminal enterprise, as that term is defined in 21 U.S.C. § 848. The parties further agree that Defendant was a minor participant in

---

**3.** The "safety-valve" provision requires that: "(1) the defendant does not have more than 1 criminal history point, as determined under the Sentencing Guidelines; (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) the defendant was not an organizer, leader, manager, or supervisor of others in this offense under the sentencing guidelines, and that Defendant was not engaged in a continuing criminal enter-

prise, as that term is defined in 21 U.S.C. § 848; and (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning this offense or offenses which were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this request." 18 U.S.C. § 3553(f), *quoted in* U.S.S.G. § 5C1.2.

the offense. Having examined the facts of this case, I see no reason to dispute these stipulations and, consequently, Defendant's offense level will decrease by 2 levels. *See* U.S.S.G. § 3B1.2(b).

### D. Acceptance of Responsibility

Defendant and the government have stipulated that Defendant has demonstrated a recognition and affirmative acceptance of responsibility for this offense and that Defendant timely notified authorities of her intention to enter a plea of guilty. Finding no basis to contest this stipulation, I shall reduce Defendant's offense level by an additional 3 levels. *See* U.S.S.G. §§ 3E1.1(a), (b)(2).

### E. Calculation of the Guideline Range

From a base offense level of 26, Defendant receives a 2·level decrease for meeting the criteria set forth in the "safety-valve" provision, a 2 level decrease for her minor role in the offense and a 3 level decrease for her acceptance of responsibility. Accordingly, Defendant's total offense level is 19. Defendant has zero criminal history points resulting in a criminal history category of I. Thus, with a total offense level of 19 and a criminal history category of I, I conclude that the applicable guideline range is 30 to 37 months.

## III. MOTION FOR DOWNWARD DEPARTURE

Defendant seeks a downward departure from the applicable guideline range on three separate grounds. The Sentencing Reform Act of 1984 established the United States Sentencing Commission (the "Commission") which promulgated the Guidelines to promote uniformity of sentences for similar crimes. *See United States v. Haut,* 107 F.3d 213, 218 (3d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 2528, 138 L.Ed.2d 1028, *and cert. denied,* —— U.S. ——, 118 S.Ct. 130, 139 L.Ed.2d 80 (1997).

As a starting point for a sentence-departure analysis, courts should treat each guideline as "carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes." U.S.S.G. Ch. 1, Pt. A,· intro., 4(b); *see United States v.*

*Baird,* 109 F.3d 856, 870 (3d Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 243, 139 L.Ed.2d 173 (1997). However, "[w]hen a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." U.S.S.G. Ch. 1, Pt. A, intro., 4(b).

A court may depart from the applicable guideline only if it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); *accord* U.S.S.G. § 5K2.0. Thus, "[b]efore a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline. To resolve this question, the district court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing." *Koon v. United States,* 518 U.S. 81, 95–99, 116 S.Ct. 2035, 2046–47, 135 L.Ed.2d 392 (1996).

The Guidelines generally do not "limit the kinds of·factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." U.S.S.G. Ch. 1, Pt. A, intro., 4(b); *see Baird,* 109 F.3d at 870. In *Koon,* the Supreme Court examined the universe of potential factors and divided them into four categories: (1) forbidden factors; (2) encouraged factors; (3) discouraged factors; and (4) factors that are unmentioned in the Guidelines. *Koon,* 518 U.S. at 94, 116 S.Ct. at 2045.

A factor's category will guide the sentencing court's discretion. *See United States v. Sutton,* 973 F.Supp. 488, 492 (D.N.J.1997). As the Supreme. Court explained:

If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If

the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If a factor is unmentioned in the Guidelines, the court must, after considering "the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," decide whether it is sufficient to take the case out of the Guidelines' heartland. The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be "highly infrequent."

*Koon,* 518 U.S. at 95–96, 116 S.Ct. at 2045 (citations omitted).

When applying this analysis to a proposed basis for departure, the sentencing court must keep in mind that, since *Koon,* federal courts can no longer categorically proscribe any basis for departure. *See United States v. Dethlefs,* 123 F.3d 39, 46 (1st Cir.1997); *United States v. Charry Cubillos,* 91 F.3d 1342, 1344 (9th Cir.1996). "Congress did not grant federal courts authority to decide what sorts of sentencing considerations are inappropriate in every circumstance." *Koon,* 518 U.S. at 106, 116 S.Ct. at 2050. "Thus, for the courts to conclude a factor must not be considered under any circumstance would be to transgress the policymaking authority vested in the Commission." *Id.*

Instead, the Supreme Court explained that "a federal court's examination of whether a factor can ever be an appropriate basis for departure is limited to determining whether the Commission has proscribed, as a categorical matter, consideration of the factor. If the answer to the question is no—as it will be most of the time—the sentencing court must determine whether the factor, as occurring in

the particular circumstances, takes the case outside the heartland of the applicable Guideline." *Id.* at 108, 116 S.Ct. at 2051.

### A. Stipulation to Deportability

■ Defendant requests a downward departure on the basis of her intent "to concede deportation and to waive any and all rights and defenses she may have to being deported." *See* Defendant's Mem. at 1. Defendant contends that, by conserving the government's resources, her "stipulation to deportability" warrants a departure pursuant to U.S.S.G. § 5K2.0 as a mitigating factor not contemplated by the Guidelines. In this case, however, Defendant's proffered stipulation does not warrant a departure from the guidelines because it does not present a "mitigating circumstance" within the meaning of U.S.S.G. § 5K2.0 and 18 U.S.C. § 3553(b).

The Third Circuit has instructed that "[t]o determine whether a proposed departure satisfies § 5K2.0, [a court] must first consider whether the defendant's actions could constitute a 'mitigating circumstance.'" *United States v. Evans,* 49 F.3d 109, 112 (3d Cir. 1995) (quoting U.S.S.G. § 5K2.0); *see United States v. Newby,* 11 F.3d 1143, 1148 (3d Cir.1993) ("In addition to not being considered by the Commission, a circumstance must be a *mitigating* one in order to provide a basis for a downward departure.") (emphasis in original), *cert. denied,* 511 U.S. 1087, 114 S.Ct. 1841, 128 L.Ed.2d 468, *and cert. denied,* 513 U.S. 834, 115 S.Ct. 111, 130 L.Ed.2d 58 (1994); *United States v. Mason,* 966 F.2d 1488, 1494–96 (D.C.Cir.) (discussing definition of "mitigating" and concluding that "[n]o matter how unusual the circumstances surrounding Mason's apprehension, we do not believe they constitute 'mitigating' circumstances as required by 18 U.S.C. § 3553(b)"), *cert. denied,* 506 U.S. 1040, 113 S.Ct. 829, 121 L.Ed.2d 699 (1992).[4]

---

4. If the defendant presents a mitigating circumstance, "then we must decide whether such circumstance is 'of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" *Evans,* 49 F.3d at 112. Courts have disagreed as to whether the Guidelines take into consideration an alien defendant's

stipulation to deportability. In a detailed and methodical opinion, the First Circuit has held that a stipulated deportation was adequately contemplated by the Commission and thus cannot provide a basis for departure pursuant to § 5K2.0. *See Clase–Espinal,* 115 F.3d 1054. Other courts, however, have found that sentencing courts do have discretion to depart on this basis. *See Cruz–Ochoa,* 85 F.3d at 325–26; *Ram-*

Consequently, courts have refused to grant downward departures where the proposed basis for the departure is not a mitigating circumstance within the meaning of 18 U.S.C. § 3553(b). *See, e.g., United States v. Crippen,* 961 F.2d 882, 885 (9th Cir.) ("[t]he receipt of ineffective assistance of counsel is simply not a 'mitigating or aggravating' circumstance"), *cert. denied,* 506 U.S. 965, 113 S.Ct. 438, 121 L.Ed.2d 358 (1992); *United States v. Clark,* 8 F.3d 839, 842 (D.C.Cir. 1993) (unique ability of District of Columbia prosecutor to decide whether to prosecute in federal or local court "is not a mitigating factor within the meaning of 18 U.S.C. § 3553(b)").

Mitigating circumstances include circumstances "important to the statutory purposes of sentencing." *Evans,* 49 F.3d at 114. Defendant contends that her stipulation would save the government from spending its limited resources to deport Defendant over her objections. *See Ramnath,* 958 F.Supp. at 100–01 (describing the "lengthy deportation process"). *But see Clase–Espinal,* 115 F.3d at 1058 (alien cannot meet atypicality requirement "simply by relying upon whatever administrative convenience presumably may result from a stipulated deportation"). In the circumstances of this case, however, Defendant's stipulation would not confer any benefit on the government.

Defendant purports "to confer a 'gift' upon the government, where the government does not want it or see the value of it." Government's Mem. at 13. Although a mitigating circumstance need not relate to a defendant's culpability, *Evans,* 49 F.3d at 114, it would expand the concept of a "mitigating circum-

stance" well beyond its logical limit to include this "unwanted gift." This is consistent with Congress' explicit determination that a district court cannot order the deportation of an alien unless requested to do so by the United States Attorney, with the consent of the Commissioner of the Immigration and Naturalization Service (the "Commissioner"). *See* 8 U.S.C. §§ 1228(c)(1), (5). Thus, because the government has declined Defendant's offer, Defendant's stipulation cannot constitute a "mitigating circumstance" under 18 U.S.C. § 3553(b).[5]

Defendant's offer to stipulate to her deportability also fails to present a "mitigating circumstance" because that offer is unenforceable. For Defendant's stipulation to have any "practical or legal effect," I must be able to decide her deportability and to order her deportation should she renege and subsequently challenge her deportation. *See United States v. Flores–Uribe,* 106 F.3d 1485, 1488 (9th Cir.1997). This Court, however, lacks jurisdiction to make such a determination, or to enter such an order.

Immigration Judges have exclusive jurisdiction to determine an alien's deportability. Congress has determined that administrative proceedings before Immigration Judges "shall be the sole and exclusive procedure for determining whether an alien may be ... removed from the United States." 8 U.S.C. § 1229a(a)(3); *see United States v. Romeo,* 122 F.3d 941, 943 (11th Cir.1997) ("immigration judges alone have the authority to determine whether to deport an alien"). This statutory mandate precludes a district court from making any determination of a defendant's deportability.

nath, 958 F.Supp. at 103 (classifying stipulated deportation as an encouraged factor by analogy to U.S.S.G. § 5K1.1); *United States v. Santos,* 1996 WL 617329 (S.D.N.Y.1996). Because I find that Defendant has failed to present a mitigating circumstance, however, I do not reach this issue.

**5.** Moreover, Defendant's offer to waive her defenses to deportation appears to be an empty gesture because she has not demonstrated any viable defenses. Defendant appears to be deportable as a Columbian national with no legal basis for remaining in the United States. *See* 8 U.S.C. §§ 1252(a)(1)(C). In addition, Defendant appears to be deportable by virtue of having pled guilty to importing approximately 350 grams of

heroin into the United States. *See* 8 U.S.C. § 1227(a)(2)(B)(i) (alien deportable based on conviction for controlled substances offense); *see also* 8 U.S.C. § 1227(a)(2)(A)(iii) (alien deportable based on conviction for aggravated felony); 8 U.S.C. § 1227(a)(2)(A)(i)(I) (alien deportable based on conviction for crime of moral turpitude). Absent a viable defense to deportation, Defendant's offered stipulation would not present a mitigating circumstance under 18 U.S.C. § 3553(b). *See Clase–Espinal,* 115 F.3d at 1059 (holding that a stipulated deportation is not beyond the heartland of the Guidelines "at least in the absence of a colorable, nonfrivolous defense to deportation").

Although Congress provided one exception to this jurisdictional bar, *see* 8 U.S.C. § 1229a(a)(3), that exception requires that the United States Attorney request deportation and that the Commissioner consent, 8 U.S.C. § 1228(c)(1); *see Romeo,* 122 F.3d at 943 (district court may enter deportation order at sentencing "only if" the United States Attorney requests it and the Commissioner consents); *Flores–Uribe,* 106 F.3d at 1488; *United States v. Aispuro,* 127 F.3d 1133, 1134 (9th Cir.1997); *United States v. Lozada,* 1996 WL 502200 (E.D.Pa. Aug.27, 1996); *see also United States v. Chukwura,* 101 F.3d 230, 231 n. 3 (2d Cir.1996). The same jurisdictional requirements apply even where a defendant stipulates to deportation. *See* 8 U.S.C. § 1228(c)(5).

In this case, neither of the jurisdictional prerequisites has been satisfied: the United States Attorney has not requested deportation and the Commissioner has not consented to deportation. Consequently, this Court cannot enter any order purporting to determine Defendant's deportability.[6]

The Ninth Circuit has held that a defendant's offer to stipulate to deportation at sentencing had no practical or legal effect where the court lacked jurisdiction to enter an appropriate order, and therefore the court properly refused to depart on that basis. In *Flores–Uribe,* the defendant requested that the court enter a deportation order at his sentencing and that the court depart downward on that basis. The Ninth Circuit determined that the district court, like the Court in the present case, had no jurisdiction to enter the deportation order without a request by the United States Attorney and the concurrence of the INS Commissioner. *Id.* 106 F.3d at 1487. Because the district court lacked jurisdiction to deport the defendant, the Ninth Circuit concluded that the defen-

dant's stipulation to deportation "had no practical or legal effect" and that "[t]herefore, the [district] court had no basis for a § 5K2.0 departure, and properly concluded that none was warranted." *Id.* at 1488.

Here too Defendant's proffered stipulation would have "no practical or legal effect." For these reasons, Defendant's stipulation would be unenforceable, rendering her purportedly mitigating circumstance illusory. Thus, I conclude that Defendant's proffered stipulation presents no mitigating circumstance within the meaning of 18 U.S.C. § 3553(b). Defendant's motion for a downward departure on the basis of her stipulation to deportability, therefore, will be denied.

### 1. Attorney General's Memorandum

■ Defendant also relies on a memorandum from the Attorney General of the United States, dated April 28, 1995, addressed to all federal prosecutors. *See* Defendant's Mem. at Ex. A. In that memorandum, the Attorney General outlined procedures for obtaining stipulations to administrative deportations in plea agreements. The memorandum provides:

> To obtain such stipulations, prosecutors may agree to recommend a one or two level downward departure from the applicable guideline sentencing range in return for the alien's concession of deportability and agreement to accept a final order of deportation. Such downward departure is justified on the basis that it is conduct not contemplated by the guidelines. *See* U.S.S.G. § 5K2.0.

*Id.* at 2.[7]

Defendant asserts that the Attorney General's memorandum creates, in effect, an enforceable right to such a recommendation by

**6.** I note that Defendant's stipulation could be considered a promise to waive her rights in the future. This would also be unenforceable; however, because such a unilateral promise in a court lacking jurisdiction would not bind an Immigration Judge in a later proceeding. *See* 8 U.S.C. § 1229a(c)(3) ("No decision [by an Immigration Judge] on deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence."); 8 C.F.R. 3.25 (allowing an Immigration Judge to enter a stipulated

order of deportation "based on a review of the charging document, the written stipulation, and supporting documents").

**7.** Of course, the Attorney General's opinion that "[s]uch downward departure is justified on the basis that it is conduct not contemplated by the *guidelines*" is not dispositive of this issue if for no other reason than the Justice Department's present position as a litigant in this proceeding.

the United States Attorney. Citing *Miller v. Henman,* 804 F.2d 421, 424 (7th Cir.1986), *cert. denied,* 484 U.S. 844, 108 S.Ct. 136, 98 L.Ed.2d 93 (1987), Defendant argues that the Attorney General's memorandum deprives federal prosecutors of discretion, thereby creating an enforceable expectation that she would receive a recommendation for a downward departure. Defendant's Supp.Mem. at 3. Defendant exaggerates the court's holding in *Miller,* but even Defendant's own characterization of *Miller* does not encompass the facts of this case.

Assuming for the sake of argument the validity of Defendant's interpretation of *Miller,* that an informal memorandum could create an enforceable right by removing discretion from subordinates of the Attorney General, the Attorney General's memorandum has not done so. Defendant cites language from the memorandum indicating that "[a]ll deportable criminal aliens should be deported unless extraordinary circumstances exist." A.G. Mem. at 1. But the fact that criminal aliens should be deported does not mean that they should be beneficiaries of downward departure motions. In fact, the very next sentence of the memorandum clarifies that "[f]ederal prosecutors should seek the deportation of deportable alien defendants *in whatever manner is deemed most appropriate in a particular case." Id.* (emphasis added). Specifically, "prosecutors *may* agree to recommend a one or two level downward departure" in exchange for a stipulation of deportability. *Id.* at 2 (emphasis added). Thus, the Attorney General's memorandum does not dictate a particular course of action, but merely authorizes certain conduct in the discretion of each federal prosecutor. The memorandum confers discretion upon the United States Attorneys to take certain actions if they deem it appropriate to do so, nothing more, nothing less. The memorandum does not eliminate discretion, it confers discretion.

■ Moreover, even if Defendant were entitled to such a recommendation by the United States Attorney, it would not bind this Court, *see infra* Part III.A, nor would it bind the United States without the consent of the Commissioner, *see United States v. Igbonwa,* 120 F.3d 437 (3d Cir.), *cert. denied,* —— U.S. ——, 118 L.Ed.2d 121, 140 L.Ed.2d 121 (1998). Thus, even under the legal theory advanced by Defendant, the memorandum from the Attorney General does not create any enforceable right to a downward departure.

**B. Conditions of Confinement**

Defendant also requests a downward departure on the ground that she will suffer harsher conditions of confinement due to her status as a deportable alien. Specifically, Defendant contends that "she will not be released to a halfway house, community confinement or a minimum security facility during the last portion of her sentence." Defendant's Mem. at 3.

Defendant implicitly refers to Congress' instructions to the Bureau of Prisons respecting pre-release confinement. Congress has provided that:

> [t]he Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement.

18 U.S.C. § 3624(c). Although neither side has cited any authority, both seem to agree that Defendant's status as a deportable alien would make her ineligible for pre-release confinement. *Cf. United States v. Charry Cubillos,* 91 F.3d 1342, 1343 (9th Cir.1996) ("Someone not classified as a deportable alien is eligible for these placements").[8]

---

8. This raises an issue of timing. Although Defendant's claim here is predicated on her status as a deportable alien, I have concluded in this opinion that this Court lacks authority to determine her deportability. Nevertheless, Defendant's deportability may well be determined by an Immigration Judge prior to her eligibility for pre-release confinement. Therefore, for the purposes of this discussion only, I shall assume that Defendant is a deportable alien subject to deportation immediately upon release from the custody of the Bureau of Prisons.

In *United States v. Restrepo*, 999 F.2d 640 (2d Cir.), *cert. denied*, 510 U.S. 954, 114 S.Ct. 405, 126 L.Ed.2d 352 (1993), Judge Kearse of the Second Circuit held that an alien's ineligibility for pre-release confinement could not serve as an appropriate basis for departure. The court initially found that "pertinent collateral consequences of a defendant's alienage could ... serve as a valid basis for departure if those consequences were extraordinary in nature or degree." *Id.* at 644. Because of "the discretion that Congress has confided to the Bureau [of Prisons] and the reasonableness of the Bureau's consideration of the fact that the prisoner will be deported following the completion of his term of imprisonment," however, the court concluded that a deportable alien's ineligibility for a minimum security facility such as a halfway-house was "an inappropriate basis for departure." *Id.* at 645–46.

Several other circuits have followed that holding. *See United States v. Veloza*, 83 F.3d 380 (11th Cir.1996); *United States v. Mendoza–Lopez*, 7 F.3d 1483 (10th Cir.1993), *cert. denied*, 511 U.S. 1036, 114 S.Ct. 1552, 128 L.Ed.2d 201 (1994); *United States v. Nnanna*, 7 F.3d 420 (5th Cir.1993); *see also Santos v. United States*, 940 F.Supp. 275, 281 (D.Haw.1996).

The District of Columbia Circuit, however, has disagreed with the Second Circuit and concluded that an alien's ineligibility for pre-release confinement could provide an appropriate basis for departure. *See United States v. Smith*, 27 F.3d 649, 655 (D.C.Cir. 1994). The *Smith* court limited that holding, however, by emphasizing that the difference in severity of sentences must be substantial, that the sentencing court must have a high degree of confidence that it will apply for a substantial portion of the sentence, and that the greater severity must be undeserved. *Id.* at 655.

This conflict among the circuits has been settled by the Supreme Court. *See United States v. Farouil*, 124 F.3d 838, 847 (7th Cir.1997) ("[w]hat all of these opinions have in common is that they all preceded *Koon v. United States*, [518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) ]."). In *Koon*, the Supreme Court explicitly held that only the Commission could prevent a factor from serving as a basis for departure in every case. *See Koon*, 518 U.S. at 105–08, 116 S.Ct. at 2050–51. Thus, "[a]fter *Koon*, federal courts can no longer categorically proscribe a basis for departure—unless the Commission has proscribed, as a categorical matter, consideration of the factor." *Charry Cubillos*, 91 F.3d at 1344 (reversing district court's downward departure on this basis for failing to make the findings required by *Koon*). It is clear, therefore, that *Koon* effectively overruled *Restrepo*. *See Farouil*, 124 F.3d at 847; *Charry Cubillos*, 91 F.3d at 1344–45; *United States v. Sutton*, 973 F.Supp. 488, 494 (D.N.J.1997).

In forbidding a federal court from proscribing a factor, the Supreme Court instructed that "[i]f a factor is unmentioned in the Guidelines, the court must, after considering the 'structure and theory of both relevant individual guidelines and the Guidelines taken as a whole,' decide whether it is sufficient to take the case out of the Guideline's heartland." *Koon*, 518 U.S. at 96, 116 S.Ct. at 2045 (quoting *United States v. Rivera*, 994 F.2d 942, 949 (1st Cir.1993) (Breyer, C.J.)). The Court offered this further explanation:

> Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline. To resolve this question, the district court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing.

*Koon*, 518 U.S. at 98, 116 S.Ct. at 2046–47.

In this case, I find that Defendant's ineligibility for pre-release confinement pursuant to 18 U.S.C. § 3624(c) is not "sufficient to take the case out of the Guideline's heartland." *Koon*, 518 U.S. at 96, 116 S.Ct. at 2045. The Guidelines do not mention a deportable alien's ineligibility for pre-release confinement. Nevertheless, I conclude that the Commission took this generic factor into consideration and that, consequently, this factor is unavailable as a basis for departure absent some unusual aspect of a particular case

which the Commission would not have considered.

In *Sutton,* Judge Bassler analyzed whether allegedly sub-standard conditions of pretrial confinement in a county jail had been adequately considered by the Commission. He observed "that a criminal defendant is often placed in pretrial confinement" and concluded that "the Sentencing Commission, therefore, presumably considered the fact of pretrial confinement when formulating the guidelines." *Sutton,* 973 F.Supp. at 493. In a similar vein, I note that § 3624(c) applies to nearly all federal prisoners; thus, I conclude that the Commission must have considered the fact of pre-release confinement. *See id.; see also Koon,* 518 U.S. at 98, 116 S.Ct. at 2046–47 (district court must be "informed by its vantage point and day-to-day experience in criminal sentencing"); *cf. Clase–Espinal,* 115 F.3d at 1057 ("We are loath to presume, as a general matter, that the Commission either overlooked or inadequately considered the statutory and regulatory structures upon which an informed sentencing treatment of immigration offenses significantly depended.").[9]

Moreover, given the large number of deportable aliens sentenced in the federal courts, I am led inexorably to conclude that the Commission considered the sentencing of deportable aliens in conjunction with § 3624(c). *See id.;* U.S.S.G. § 2D1.1 (prescribing sentences for importing controlled substances across our national border); *see also Koon,* 518 U.S. at 98, 116 S.Ct. at 2046–47; *cf. Clase–Espinal,* 115 F.3d at 1057. Therefore, I find that the "generic" factor of a deportable alien's ineligibility for pre-release confinement was adequately taken into consideration by the Commission.

As Judge Bassler observed in the analogous context of the conditions of pretrial confinement, however, "[u]nusual [pre-release] confinement ... in either length or severity of condition, can properly be considered by the sentencing court." *See Sutton,* 973 F.Supp. at 493. Although the nature of § 3624(c) and its mechanical application make these conditions unlikely, that is consistent with the Commission's "expectation that departures based on grounds not mentioned in the Guidelines will be 'highly infrequent.' " *Koon,* 518 U.S. at 95, 116 S.Ct. at 2045.

■ In sum, the typical ineligibility of deportable aliens for pre-release confinement cannot provide a basis for departure because that factor was incorporated into the Guidelines by the Commission. If, however, a deportable alien demonstrates unique circumstances particular to a certain case which make that case so unusual that the Commission would not have considered it, then a departure may be warranted.

■ In this case, however, Defendant has not pointed to any factor which could provide a basis for a downward departure other than the general ineligibility of deportable aliens for pre-release confinement. In fact, given the applicable guideline range, Defendant would be eligible for at most 3.0 to 3.7 months of pre-release confinement. *See* 18 U.S.C. § 3624(c); *cf. United States v. Miranda,* 979 F.Supp. 1040 (D.N.J. 1997) (refusing to grant downward departure based on harsh conditions of pretrial confinement because defendant was subjected to them for only 3.5 months).

For these reasons, Defendant's case lies squarely within the heartland of cases considered by the Commission in prescribing the applicable guideline range. Consequently,

---

9. Congress and the Supreme Court apparently envisioned such a practical, common-sense approach to this analysis. The Supreme Court has acknowledged the viability of a departure based on an unmentioned factor. *See Koon,* 518 U.S. at 95, 116 S.Ct. at 2045. Congress, however, requires that "[i]n determining whether a circumstance was adequately taken into consideration by the Commission, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." 18 U.S.C. § 3553(b); *accord Koon,* 518 U.S. at 92, 116 S.Ct. at 2044. *But see Clase–Espinal,* 115 F.3d at 1058 & n. 4 (citing statistics published by the Immigration and Naturalization Service in holding that an alien's stipulation to deportation was considered by the Commission). Thus, in determining whether an unmentioned factor lies within the heartland of a guideline, a sentencing court must refer only to the Guidelines Manual which, by definition, contains no mention of that factor.

Defendant's motion for a downward departure on the basis of harsher conditions of confinement will be denied.

### C. Aberrant Behavior

Finally, Defendant moves for a downward departure on the ground that her illegal conduct can be characterized as "aberrant behavior." The introductory statement of the Guidelines provides that "[t]he Commission, of course, has not dealt with the single acts of aberrant behavior that still may justify probation at higher offense levels through departures." U.S.S.G. Ch. 1, Pt. A, intro., 4(d).

Several courts have held that this statement authorizes a sentencing court to depart downward even where the ensuing sentence is not probation. *See United States v. Grandmaison*, 77 F.3d 555, 561 (1st Cir. 1996); *United States v. Duerson*, 25 F.3d 376, 380 (6th Cir.1994); *United States v. Fairless*, 975 F.2d 664, 668 (9th Cir.1992); *United States v. Withrow*, 85 F.3d 527, 530 (11th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 332, 136 L.Ed.2d 245 (1996); *see also United States v. Kalb*, 105 F.3d 426, 429 (8th Cir.1997) (under *Koon*, aberrant behavior is an encouraged factor when resulting in a sentence of probation and is otherwise an unmentioned factor). Because I conclude that Defendant's conduct cannot be characterized as aberrant under the legal standard applicable in this circuit, I need not decide whether I could depart without imposing mere probation.

In *United States v. Marcello*, 13 F.3d 752, 760–61 (3d Cir.1994), the Third Circuit adopted the majority rule that "[a] single act of aberrant behavior ... generally contemplates a spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning." *Id.* at 761 (quoting *United States v. Carey*, 895 F.2d 318, 325 (7th Cir.1990)) (emphasis omitted). "Aberrant behavior must involve a lack of planning; it must be a single act that is spontaneous and thoughtless, and no consideration is given to whether the defendant is a first-time offender." *Marcello*, 13 F.3d at 761.

In *Marcello*, the defendant deposited a total of $63,000.00 in a bank account through a series of transactions designed to avoid various federal reporting requirements. The Third Circuit affirmed the district court's conclusion that the defendant's conduct was not aberrant behavior because "some pre-planning was required to deposit $9,000.00 each day over a one-week period of time." *Id.; see also United States v. Artim*, 944 F.Supp. 363, 368 (D.N.J.1996); *compare United States v. Russell*, 870 F.2d 18 (1st Cir.1989) (noting that the defendant's conduct was "arguably aberrant behavior" where armored car drivers were mistakenly handed $80,000 and kept it for one week but then returned it and cooperated fully).

■ Although Defendant's conduct does not appear typical, I am constrained to apply the law as dictated by the Guidelines and interpreted by the Third Circuit. Unfortunately for Defendant, this leads me to conclude that Defendant's conduct does not amount to aberrant behavior within the meaning of U.S.S.G. Ch. 1, Pt. A, intro., 4(d). Defendant was initially approached by two men about this crime in November of 1996 and committed the offense on December 7, 1996. When the two men offered her $10,000 to smuggle heroin into the United States, Defendant gave them her business card. During the time between this first encounter and Defendant's flight to America, Defendant had contact with the two men on several occasions to discuss how and when she would commit this offense. Thus, under the standard announced in *Marcello*, Defendant's conduct clearly involved "some pre-planning" and cannot be characterized as spontaneous or thoughtless. *See Marcello*, 13 F.3d at 761. Therefore, Defendant's motion for a downward departure on the basis of aberrant behavior will be denied.

### IV. CONCLUSION

For the reasons stated above, Defendant's motion for a downward departure will be denied. The Court will enter an appropriate Order.

Given a base offense level of 26 with adjustments of 3 levels for acceptance of responsibility, 2 levels for minimal role and another 2 levels pursuant to U.S.S.G.

§ 2D1.1(b)(4), *see infra* Part II, Defendant's total offense level is 19. Having no criminal history points, Defendant has a Criminal History Category of I. Thus, the applicable guideline range is 30 to 37 months.

In light of the stipulations contained in the plea agreement relating to U.S.S.G. § 5C1.2(1)–(4) and 18 U.S.C. § 3553(f)(1)–(4), this Court's finding that Defendant has no more than 1 criminal history point and the stipulation by the government on the record regarding the criteria required by U.S.S.G. § 5C1.2(5), I conclude that Defendant is eligible to be sentenced under the "safety-valve" provision of U.S.S.G. § 5C1.2, *i.e.*, below the mandatory minimum sentence for 21 U.S.C. §§ 952(a), 960, but within the applicable guideline range, in this case, 30 to 37 months.

### ORDER

This matter having come before the Court on the motion of Defendant, Maria de la Luz Angel–Martinez (de Isaza), for a downward departure pursuant to U.S.S.G. § 5K2.0, Richard Coughlin, Esq., Federal Public Defender, and Lori M. Koch, Esq., Assistant Federal Public Defender, appearing on behalf of Defendant, and Faith S. Hochberg, Esq., United States Attorney, and V. Grady O'Malley, Esq., Special Litigation Counsel, Assistant United States Attorney, appearing on behalf of the United States of America; and,

The Court having considered Defendant's Memorandum, the government's response, Defendant's reply memorandum, the plea agreement between Defendant and the government, and the Presentence Investigation Report, for the reasons set forth in the Court's OPINION, filed concurrently with this ORDER;

IT IS, on this 15th day of December, 1997, hereby ORDERED that Defendant's motion for a downward departure is DENIED.